HENRY JACKSON

v.

THE PEOPLE, ETC.

</div>

1. FALSE PRETENSES—WARRANTY GIVEN.—If false pretenses are made with intent to cheat and defraud in the sale of a horse, and they are an inducing cause of the purchase, the fact that there is a warranty, on which a civil remedy may be based, will not screen the person making them from the consequences attaching to the act of obtaining money or property by false pretenses.

2. SAME.—But all cases where false statements are made in the sale of property, and a warranty given, are not within the statute against false pretenses. Where reliance is placed upon the promise or warranty and not upon the representations the case is clearly not within the statute.

Jackson v. The People.

3. EVIDENCE OF SIMILAR DEALINGS.—Where the circumstances of the case are such that guilty knowledge on the part of the accused must be shown, then whether he had such knowledge is an issue in the case and prior similar dealings, within reasonable limits, may tend to show such guilty knowledge; but where the charge is of false statements of facts within the knowledge of the accused, and where, from proof that they were false, the inevitable inference is that they were made for a fraudulent purpose, evidence of the perpetration of other like offenses is not admissible.

4. SAME.—In an indictment for obtaining money under false pretenses made in the sale of a horse, evidence of similar pretenses in other sales by the accused is inadmissible.

5. ALLUSION TO ACCUSED NOT TESTIFYING.—The allusion by counsel to the fact that the accused does not testify is unprofessional and in direct violation of the statute.

ERROR to the Criminal Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.   Opinion filed April 28, 1886.

Plaintiff was tried in the Criminal Court of Cook county, on an indictment for obtaining money under false pretenses. The false pretenses were alleged to have been made in the sale of a certain horse to the prosecuting witnesses. On the trial in his opening statement to the jury, the assistant state's attorney, among other things, said:

"This case is important, not so much because of the amount involved, but because it will appear in the proof of this case, that there are certain prescribed methods of men who conduct business in the manner of Mr. Jackson."   Exception.

"I said you would find this charge and this case a case of some importance, not so much for the penalty or the amount, but important because of the methods used and the manner of the defendant; and not only the manner of the defendant in this case, and not only the methods in this case, but I expect to prove the method of this man in obtaining money and property by false pretenses.  It will become important to you to know who the defendant is in this case.   It not only becomes important on account of whom the defendant is, but on account of the methods used in this community to perpetrate the offense as charged."   Exception.

"One of the expectations of proof in this case, is who the

defendant on trial is, and it will become necessary in this to show who the defendant is, in order to show, as you will see before we get through, the guilty intent and knowledge of this defendant, the guilty intent and knowledge of this defendant being the very gist of the crime, and who the man is becomes an important factor in the case." Exception.

" I state that we expect to prove, in the line of guilty intent and under the law, the knowledge of this man by other cases." Exception.

Detective Shea was called by the prosecution, and among other things the following colloquy occured in the presence of the jury: Q. " How many times, Mr. Shea, have you known of Henry Jackson being implicated and arrested for obtaining money under false pretenses upon the sales of horses? How many times do you know of his having been charged with that?" Objected to.

The Court, to assistant state's attorney: "If there is any authority upon that, I will hear you."

Mr. Thompson, for plaintiff in error: " If there is to be any argument on this, I ask that the jury be withdrawn."

The Court: " I will not order that the jury withdraw."

3. The assistant state's attorney then cited section 53, Whart. Cr. Ev., and proceeding, said: " The Supreme Court of the State of Ohio, upon this very proposition, in a case entitled Tarbox v. The State, and also in the case entitled Henry Jackson v. The State, decides this very proposition. It is laid down in the 38th Ohio as follows: The plaintiff in error, the court says, who seeks to file his petition in error in this court, was convicted in the Common Pleas Court of Cuyahoga county, upon an indictment charging that he, jointly with Henry Jackson, Thomas Allen and Charles Smith— and we propose to prove that this is the same Henry Jackson who is the defendant in this case." Exception.

The Court: "It is competent in a case of false pretenses to show that about the same time a party made representations of a similar character. Now, if this party has made false representations of a similar character in the sale of a horse,

Jackson v. The People.

similar to these and similar to what he made in this case, as you claim, then it would be competent."

Questions were then put to the witness, seeking to draw out evidence that Jackson had admitted to witness that he had made false representations in the sale of certain other horses to persons other than the prosecuting witness Cohn, some time prior to the Cohn sale. The court said to the witness: " If he made a statement in regard to a given transaction, I will allow you now to state what was said."

Witness: " Do you mean to say when there was a warrant ? "

The Court: " No. Were you present on any such occasion, when there was a conversation between yourself, a third party and Mr. Jackson, in regard to a horse ? "

A. " Yes."

Q. " What took place ? " Exception.

A. " Well, these people had made a complaint to me; they were outsiders. I can't remember, now, where they were from. There were two or three of them."

Q. " From outside of the city ? "

A. " Yes; and it was about a very bad horse they had bought from a man that looked very much like Jackson, and I asked them where he lived. They told me in the neighborhood. I sent for Mr. Jackson, and had a talk with him, and he says, ' By God! I will sell a horse to any man I can sell him to.' And I said, ' If you come back here and sell bad horses again, Mr. Jackson, we will make it very hot for you. These people do not live in Chicago, and we have had too many of these kind of cases, and the best thing you can do—' Objection.

The Court. " I shall have to exclude that unless he made a direct admission himself in regard to that."

A. " He admitted he had sold these people a particular horse they were talking about, but said its qualities were a great deal better than the other people thought."

The Court. " That will hardly do ; I shall have to exclude all this testimony of Shea's."

Detective James Morgan was permitted against the ob-

jection of defendant to testify that he knew defendant dealt in "dummies" and "bulls," that is, as he explained, wind-broken, sunstruck and crazy horses.

The evidence of prosecuting witness and others tended to show that Jackson advertised the horse for sale; that Cohn, seeing the advertisement, went to see the horse; that Jackson made representations as to the horse that turned out to be false and were known by Jackson to be false when he made them. A written warranty was given by Jackson to Cohn at the time of the sale.

Plaintiff in error did not take the witness stand at the trial, and the special counsel who aided in the prosecution said: "Gentlemen, the law prohibits our commenting upon the fact that the defendant did not take the stand." Objection being made, he went on: "I say the law forbids our commenting upon the fact that the defendant did not take the stand in this case. I say, I have no right to say anything about that." There was a verdict of guilty, judgment, and the case comes here on error.

Messrs. THOMSON & FELSENTHAL, for plaintiff in error.

Mr. JULIUS S. GRINNELL and F. W. WALKER, for defendant in error; that evidence of the previous sales was admissible to prove guilty knowledge, cited Tarbox v. State, 38 Ohio, 581; Jackson v. State, 38 Ohio, 585; Wharton on Criminal Ev. §§ 44, 45; Hall v. Naylor, 18 N. Y. 588.

MORAN, J. If false pretenses are made with intent to cheat and defraud in the sale of a horse and they are an inducing cause of the purchase, the fact that there is a warranty, on which a civil remedy may be based, will not screen the person making them from the consequences attaching to the act of obtaining money or property by false pretenses.

The promise in the written warranty, to take back the horse and refund the money, may, it is true, have an influence and operate on the mind of the purchaser, but, if the false representation of matters of fact contained in the writing or in the

Jackson v. The People.

colloquy, which precedes the execution of the writing, in fact constitute the main inducement to the purchase, there may be a conviction, notwithstanding the fact that the promise of the warranty operated upon the purchaser.

The fact that a promise is combined with a false pretense does not take away the criminal character of the act. " If the pretense and promise blend together and jointly act upon the defrauded person, whereby he is induced to give faith to the pretense, the case is within the statute. State v. Dowe, 27 Iowa, 273.

It is no defense to a false pretense that it is backed up by a written warranty as to the future. Watson v. The People, 87 N. Y. 561.

All cases where false statements are made in the sale of property, and a warranty given, are not, however, within the statute against false pretenses. When reliance is placed upon the promise or warranty, and not upon the representations, the case is clearly not within the statute, else every case of breach of warranty would be the basis of a criminal prosecution. Rex v. Codington, 1 Car. & P. 661.

It is always a question of fact for the jury in each case, to ascertain from the proper evidence, whether the representation made was in its nature calculated to deceive ; whether the prosecutor relied upon the representation as the main inducing clause of the purchase ; whether the representation was false and known to be so to the person making it, and whether the prosecutor was deceived by the representation and induced to part thereby with his money or property.

This inquiry, as the question of guilt or innocence in all trials, must be answered by the jury from a consideration of legally competent evidence only.

This brings us to determine whether the rulings of the court, at the trial, were such as to exclude from the jury improper and irrelevant testimony injurious to plaintiff in error, and whether the statements made in the presence of the jury by the assistant prosecutor and special counsel, were calculated to deprive plaintiff in error of the fair trial which the law secures to every person charged with a criminal offense.

It is perfectly apparent from the record, that the jury learned from the testimony of Shea, that Jackson had been charged with making false representations in the sale of other horses; that he had been arrested on other charges of false pretenses, and that the police were after him. From the statement of the assistant prosecutor, made while reading the Ohio report, the jury learned that the man then on trial was the same Henry Jackson who had been convicted in Ohio of false representations in the sale of a horse.

The theory of the trial court was that it was competent to prove that defendant had defrauded other persons than the prosecuting witness by false representations in the sale of horses.

The general rule limits the trial to the immediate act for which the defendant is indicted.

"This rule (says Greenleaf in his work on Evidence, Sec. 52) excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute."

There are cases in which, it being material to prove the knowledge or intent of the party, evidence of collateral facts has been admitted, as in an indictment for knowingly uttering a forged document or counterfeit bank note, proof of the possession or of the previous or subsequent utterance of other false documents or notes, though of a different description, is admitted as material to the question of guilty knowledge or intent. 1 Greenleaf Ev., Sec. 53.

In some indictments for false pretenses, when the pretense was that a false document was a true one, or that a false diamond ring was genuine, the question of the knowledge of the accused that the false article was such, being identically the same as in the case of uttering false coin, proof that the accused had defrauded with other similar false documents and snide jewelry was received to establish guilty knowledge.

Thus in the case of Commonwealth v. Coe, 115 Mass. 481, on the trial of an indictment for cheating by falsely pretending that a forged certificate of stock was genuine, evidence of the possession and use by the defendant of other forged cer-

tificates of stock, about the same time, whether before or afterward, was held admissible, on the question of guilty knowledge. So in Reg v. Francis, 12 Cox C. C. 112, when the indictment was for falsely representing a diamond ring to be genuine, to show guilty knowledge, evidence that the accused had offered other false jewelry to others was received.

There are general statements in some of the works on criminal law, and one or two decisions by courts, which seem to give support to the proposition that in a prosecution for obtaining money by false pretenses it is competent to prove that the accused had made similar false pretenses, and thereby defrauded others. An examination of the cases to be found upon the subject leads us to the conclusion that such proof can be received only in the class of cases of which Commonwealth v. Coe and Reg v. Francis, above cited, are illustrations.

Where the circumstances of the case are such that guilty knowledge on the part of the accused must be shown, then whether he had such knowledge is an issue in the case, and prior similar dealings, within reasonable limits, may tend to show such guilty knowledge; but where the charge is of false statements of facts within the knowledge of the accused, and where, from proof that they were false, the inevitable inference is that they were made for a fraudulent purpose, evidence of the perpetration of other like offenses is not admissible.

The case of Tarbox v. The State, 38 Ohio, 581, is relied on as an authority in support of the admissibility of such evidence. The indictment in that case was for a conspiracy to defraud by false pretenses, and proof was admitted that Tarbox and those jointly indicted with him had, shortly before, perpetrated a like offense in Detroit. It is said in the opinion that the evidence was competent for the purpose of showing a conspiracy between the defendants, and also to show knowledge of the falsity of the representations at the time when made. The cases cited by the court do not sustain the latter portion of the proposition, and we find no reasoning in the opinion which would incline us to follow it as authority. In the case of Strong v. State, 86 Ind. 208, the Supreme Court of Indiana considered this question. The indictment was for false-

ly representing that the defendant was a member of a certain Masonic lodge located in Ohio, that he was in distress, etc., thereby defrauding a certain Masonic lodge in Indiana. Evidence was admitted that defendant had made similar false representations to the officers of another lodge and obtained money thereby, and for the error in admitting such evidence the case was reversed, and a dissenting opinion by a member of the court shows that Tarbox v. The State was called to the attention of the court.

In the case of the Commonwealth v. Henry Jackson, 132 Mass. 16, the exact question being considered was decided, and what we consider the true rule announced, and supported by a well considered opinion. The indictment was for false pretenses in the sale of a horse, the statements and circumstances being very similar to those proved in this case. The transaction occurred May 10, 1880, and evidence of the circumstances and details of three other sales, made respectively March 29, April 6 and April 26, of the same year, was admitted. In all these instances, the evidence tended to show that the parties were induced to enter into negotiations with defendant by means of advertisments in a Boston newspaper of the different horses which afterward became the subject of the sales. The representations made by the defendant, both by advertisement and orally, were proved, and the parties to such sales were allowed to testify that the statements made by the defendant as to the soundness of the horses, and in other respects, were false. The evidence was admitted by the trial judge, "solely for the purpose of showing the intent with which the defendant made the sale of the horse as charged in the indictment." The instructions limited the evidence to that purpose.

The court after examining and distinguishing a number of authorities, says that the evidence admitted did not come within the exceptions to the general rule. "No instrument was used, like the base coin or false plate which might have been innocently uttered, and of which a guilty knowledge was important to be shown. The other statements made by the defendant, at other times as to other animals, might have been

false while these were not.  The transactions formed no part of a single scheme or plan, any more than the various robberies of a thief.  They were entered upon as from time to time he might succeed in entrapping credulous or unwary persons.  Even if they were transactions of the same general character, they differed in all their details, and defendant was compelled to defend himself against three distinct charges in addition to that one, for which alone he was indicted.  Evidence of the commission of other crimes by a defendant may deeply prejudice him with the jury while it does not legally bear upon his case.  *  *  *

Such evidence compels the defendant to meet charges of which the indictment gives him no information, confuses him in his defense, raises a variety of issues, and thus diverts the attention of the jury from the one immediately before them, and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him.

Now, what was the statement made by the prosecution in this case, that the defendant would be proven to be the same man who was convicted in Ohio, and the testimony of Lieut. Shea given under oath to the jury, but an attack on the character of the defendant, tending strongly to prejudice him, and to produce the belief that he was a bad man?  Showing that he had been convicted in Ohio, and that he had sold other horses by false representation and been arrested for it, did not tend to prove any scheme or plan of which the sale in the case formed a part.  It tended to show simply that he had committed other crimes, or that he was in the habit of selling horses by false representations whenever he got the opportunity.  It is unlike the evidence of Morgan that the plaintiff in error dealt in broken-winded and heavy horses, which was not an attack on defendant's character, and which was competent as showing that he should be likely to know whether a horse was in that condition, that he was an expert, by reason of dealings in such horses, and not likely to innocently suppose that a horse thus diseased was sound.  It is not competent to show a tendency on the part of the accused to commit

the crime of which he is charged, by showing his former conviction of a similar offense. As has been admirably stated by the Supreme Court of New Hampshire, "It is not permitted the prosecution to attack the character of the prisoner, unless he first puts that in issue, by offering evidence of his good character. It is not permitted to show the defendant's bad character b · showing particular acts. It is not permitted to show in the defendant a tendency or disposition to commit the crime with wh'ch h₃ is charged. It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that proof of one fact with its circumstances has some bearing upon the issue on trial other than such as is expressed in the foregoing three propositions." State v. Le Page, 57 N. H. 245. But it is suggested that the testimony of Shea was stricken out by the court. We are inclined to think that the remark of the court can not be interpreted as an order striking out the testimony. "That will hardly do. I will have to exclude all this testimony of Shea's." That is rather a declaration of the court's conclusion to strike out than an actual striking out.

The statement is equivocal. The jury might expect some further act on the part of the court, if the testimony was finally to be taken from them. It is impossible to say that the jury did not give full weight to that testimony in considering the case. The evidence was allowed over the objection of the defendant, and being improper, the most unequivocal direction to the jury could not cure the error in admitting it. In L. B. & M. R. R. Co. v. Winslow, 66 Ill. 233, when improper testimony was admitted the Supreme Court reversed the case, and said: " It is true the court, in a proper instruction to the jury, directed them to disregard all testimony of that character, but the wrong was done, and it is not always easy to remove from the minds of a jury impressions produced by testimony which the court has admitted against objections. It is of the utmost importance in trials by jury that the testimony given to them should be free from all exceptions. To effect this purpose, rules framed with great skill, and which have received the approval of all courts, have existed for years, and which we

are not at liberty, did we so desire, to disregard." Dencer v. Parsons, 8 Bradwell, 625; Lycoming Fire Ins. Co. v. Rubin, 79 Ill. 402; Hutchins v. Hutchins, 98 N. Y. 60.

The statement of the prosecutor, that defendant was con. victed in Ohio, made with the book containing a report of the case in his hand, was of a character to make a deep impression on the jury; no attempt whatever was made to relieve the accused from the effect of such statement, and it is probable that any effort to do so would have been futile.

The allusion of the special counsel who assisted the prosecu. tion in this case, to the fact that the defendant did not testify, was covert, unprofessional, and in direct violation of the stat. ute, and deserving of the severest condemnation.

Such violation of the defendant's rights is not an error of the court, and works a mischief which the court is powerless to cure. The Supreme Court have allowed no judgment in a case, when it appears from the report that attention has been called to a violation of the statute in this regard, to stand. In Austin v. The People, 102 Ill. 261, it was said: "It may be that if the cause had been properly submitted to the jury, we might not feel compelled to disturb the conviction on merely a cons'deration of the evidence, but the record shows what we regard as a manifest error, which may have seriously affected the result of the trial."

The court then shows that reference was made to the fact that accused did not take the stand in his own behalf, and say: "We do not see that this statute can well be completely enforced, unless it be adopted as a rule of practice that such improper and forbidden reference by counsel for the prosecu- tion shall be regarded good ground for a new trial, in all cases when the proofs of guilt are not so clear and conclusive that the court can say affirmatively that the accused could not have been harmed from that cause." Also Angelo v. People, 96 Ill. 213. If, now, there was no other error in this case, we should feel bound to reverse for the plain violation of the stat- ute by the special counsel. It is the observation of the writer, that the able prosecuting attorney of Cook county, and his zealous assistants, scrupulously observe this provision

of the law in their conduct of trials, and it can not be permitted that special counsel, who not infrequently appear in prosecutions as the representatives of private malice, shall infringe the law for the gratification of their private client.

Whatever the business or the character of the plaintiff in error, he is entitled to a fair trial, and enough has been said to show that such was not given him in the court below.

The case must be reversed and remanded.