## Abe Moore v. The People, etc.

92    137
s190s  331

1. CRIMINAL LAW—*Sufficiency of Indictments for Obtaining Money by False Pretenses.*—In a prosecution against a person for obtaining a loan of money by falsely pretending to be the owner of property and executing a pretended chattel mortgage upon it to secure such loan, it is not necessary to set out the mortgage or its provisions in the indictment.

2. INSTRUCTIONS—*Abstract Propositions of Law.*—The mere fact that an instruction contains only an abstract statement of the law is not enough to require a reversal of the judgment when it can not fairly be said to have done any harm.

**Indictment for Obtaining Money by False Pretenses.**—Error to the Criminal Court of Cook County. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed November 20, 1900.

CHARLES HUGHES and W. H. BECKMAN, attorneys for plaintiff in error; ISHAM REAVIS, of counsel.

CHARLES S. DENEEN, State's Attorney, and FRANK CROWE, attorneys for defendant in error; BENJAMIN C. BACHRACH, of counsel.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

Plaintiff in error was indicted, tried and convicted of obtaining money by false pretenses. The indictment, consisting of one count, charged substantially that on December 8, 1898, in Cook county, defendant Moore falsely represented to Robert Strahorn, president of Strahorn-Hutton-Evans Commission Company, a corporation, that he had purchased 104 cattle from Becker & Degan of South Omaha, Neb.—that he owned them—that the cattle were four and a half miles north and west of Salem, Neb., with intent to obtain from said commission company $4,107.98 and check for that amount, by pledging and mortgaging said 104 cattle to said Strahorn-Hutton-Evans Commission Company; that defendant offered to give said company

such mortgage to secure said $4,107.98, to induce said company to loan and advance to him, Moore, said $4,107.98; that said Robert Strahorn believed said false representation so made by defendant to be true, and being deceived thereby, was induced to loan and did loan to defendant $4,107.98, money of said commission company, for and in consideration of a mortgage or a pledge of said 104 cattle, as security for said $4,107.98; that defendant Moore fraudulently made and delivered said mortgage to Robert Strahorn, president of said company, as such security, with intent to cheat and defraud said commission company; that said Robert Strahorn, as president of said company, received said pledge and mortgage as such security for the consideration of said $4,107.98; whereas defendant Moore had not purchased said 104 cattle from Becker & Degan, and did not own said 104 cattle, as he well knew, contrary to statute.

The first assignment of error questions the action of the court in overruling a motion to quash the indictment.

The argument with reference to that question is based upon the fact that the chattel mortgage mentioned in the indictment is not set out nor described therein.

We do not think it was necessary to set out the mortgage, or its provisions in the indictment. Hardin v. State (Texas), 7 S. W. Rep. 534.

The gist of the offense charged were the statements made by the accused that he had purchased the cattle from Becker & Degan, and that he owned the same. These are the only two representations that are expressly negatived by the indictment, and it is plain from the evidence that the prosecuting witness relied upon them, and not upon anything contained in the mortgage. If he had relied upon anything stated in the mortgage the case might have been different. The case is not whether the mortgage was a valid one, nor whether it contained warranties, or whether in any way the mortgage could, or not, be the basis of the offense of false pretenses.

In the case last cited, it is said in that part of the opinion quoted by plaintiff in error:

Moore v. The People.

"On the other hand, if the accused falsely represented and pretended that he owned the cattle and Novich believed it, and was induced by these representations to part with his goods, and afterward the appellant executed his note for the goods, securing its payment by giving a mortgage on the cattle, the note and mortgage would not affect the case in any manner whatever, because the swindle would be completed before the execution and delivery of the note and mortgage; in such a case the indictment need not mention the note and mortgage at all."

The giving of the mortgage by plaintiff in error was plainly but an incident to the representations. Plaintiff in error had drawn a draft on the commission company in favor of Becker & Degan, and as testified by the presecuting witness (the president of the commission company) represented that he had bought the particular cattle mentioned in the indictment from Becker & Degan, and that the draft he had so drawn was to pay for said cattle, and that the cattle were then owned by him and were then on his farm, in Nebraska. These were the representations that the prosecuting witness relied on, and that the jury have found were false. The prosecuting witness might well have agreed to advance the money to pay for the identical cattle that he was to have security on. The giving of a mortgage, afterward, by plaintiff in error, did not relieve him from the falsity of his representations concerning his ownership of the cattle.

It is the false representation of matters of fact that induced the advancement of the money, that the indictment is based upon. And the fact that the agreement to give a mortgage was made to secure the money advanced, will not defeat a conviction, although it may also have operated on the mind of the party paying the money. Jackson v. The People, 18 Ill. App. 508.

We think the indictment was properly sustained. See Commonwealth v. Lincoln, 93 Mass. (11 Allen) 233.

It is next contended that the *corpus delicti* was established only by the extra judicial confessions or admission of the plaintiff in error, and that such confessions are insufficient to authorize a judgment of conviction. And Campbell v.

The People, 159 Ill. 9, is relied upon. Unquestionably such is the rule, with the qualification stated in the opinion in that cause, that now the *corpus delicti* may be proved like any other fact—by presumptive or circumstantial evidence.

It is said in the brief for the people, and we believe with substantial correctness:

"In false pretenses the *corpus delicti* consists of six elements:

First. The statement made by defendant in order to obtain money or other property.

Second. The reliance of the prosecuting witness upon the statement.

Third. The obtaining of the money or property from the prosecuting witness.

Fourth. The falsity of the statement.

Fifth. Knowledge that it was false when made.

Sixth. The intention to defraud by means of the statements made."

The evidence is too lengthy for reproduction here, but in our opinion it was ample to establish the various elements needed, outside of the confessions of the plaintiff in error, to base a conviction upon.

It is not our proper province to say that the evidence in that respect did, or not, establish the fact beyond a reasonable doubt. It clearly tended to establish it, and it was for the jury to say whether it did so beyond a reasonable doubt.

The next error complained of is in respect of the instructions.

Those complained of, that were given for the people, are as follows:

"2. In this State the accused is permitted to testify in his own behalf, and, when he does so testify, he at once becomes the same as any other witness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness, and in determining the degree of credibility that shall be accorded to his testimony, the jury have a right to take into consideration the fact that he is interested in the result of this prosecu-

tion as well as his demeanor and conduct upon the witness stand, and the jury are also to take into consideration the testimony given by him, as to which you find he has been contradicted by other credible evidence. And the court further instructs the jury that if, after considering all the evidence in this case, they find that the accused or any witness has willfully and corruptly testified falsely to any fact material to the issue in this case, they have the right to entirely disregard the testimony of such witness, excepting in so far as such testimony is corroborated by other credible evidence. (5) Circumstantial evidence in criminal cases is the proving of such facts and circumstances connected with or surrounding the commission of the crime charged, as tends to show the guilt or innocence of the party charged, and if the facts and circumstances shown by the evidence in this case are sufficient to satisfy the jury of the guilt of the defendant beyond a reasonable doubt, then such evidence is sufficient to authorize the jury in finding the defendant guilty. The law demands a conviction wherever there is sufficient legal evidence to show the defendant's guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence. (6) The defendant, Abe Moore, is on trial, charged with intent to defraud the Strahorn-Hutton-Evans Commission Company by designedly obtaining from said company the sum of $4,107.98, by, on the 8th day of December, 1898, unlawfully, knowingly and falsely pretending and representing to Robert Strahorn, the president of the company, that he, the said Abe Moore, had purchased 104 head of cattle from the firm of Becker & Degan in South Omaha, in the State of Nebraska, and that he, the said Abe Moore, was then and there the owner of said cattle, and that the same were then and there four and a half miles north and west of Salem, in the State of Nebraska. If the jury believe from the evidence, beyond a reasonable doubt, that the defendant did on said day so represent to said Robert Strahorn, and that such representations were false and then known to be so by the defendant, and made by him for the purpose of obtaining said sum of money, and that the said Robert Strahorn believed such representations, and that the said Strahorn-Hutton-Evans Commission Company, relying thereon and induced thereby, paid out the sum of $4,107.98 upon the draft of the said defendant, Abe Moore, and at his request, then the jury should find the defendant guilty. (7) Every person is presumed to intend the natural and probable consequences of

his own acts. (8) If the defendant made the false pretenses charged in the indictment with the intent thereby to obtain the payment by the Strahorn-Hutton-Evans Commission Company of his draft drawn upon it, then, whether he then intended to at some future time pay the said Strahorn-Hutton-Evans Commission Company the amount of said draft, is immaterial.

The specific objection to the second instruction is said to be that it assumes as a fact that the defendant had been contradicted by credible evidence in some respects material or otherwise.

We do not so understand. The instruction was rather favorable than otherwise to the defendant, in the respect spoken of, inasmuch as it tells the jury that they should take into consideration his testimony, even though they find that he has been contradicted by credible evidence.

The complaint made as to the fifth instruction is that it merely states abstract law and has no application to the case at bar, and tended to mislead the jury.

We do not think the instruction had much application to the case as tried, but it was not erroneous as a statement of the law, and the mere fact that an instruction contains only an abstract statement of law is not enough to require the reversal of a judgment when it can not be fairly said to have done any harm. Upstone v. People, 109 Ill. 169.

The sixth instruction we believe to be correct, and not subject to the lengthy criticism urged in argument against it. The knowingly false representations that plaintiff in error had bought the 104 head of cattle from Becker & Degan and that he was the owner of them, and so represented to the prosecuting witness, who relied upon such representations, was the actuating cause upon the mind of the prosecuting witness whereby he was induced to pay out his money. Our remarks in the former part of this opinion furnish all further answer that is needed to the criticism of this instruction.

The seventh instruction is said to mean that if the defendant obtained the money by false statements whether he knew them to be false or not, he is guilty.

The instruction does not seem to be susceptible of such a construction. The most that we think could be said against the instruction is that it is not applicable to the case at bar and states an abstract proposition of law. But as to that, we have already spoken in connection with the fifth instruction.

The criticisms made as to the eighth instruction do not appear to have application to the instruction given that number and heretofore copied. If they are intended to apply to some instruction not contained in the abstract we will not hunt through the record to find it.

It is also urged that the court erred in refusing to give certain instructions asked by the defendant and in modifying others that were asked and given.

Of those refused, the eleventh is the only one particularly complained of.

The vice of that instruction is that it tells the jury that it made no difference whether or not the cattle were bought of Becker & Degan, and telling them that the only question for their determination was whether the defendant was, or not, the owner of the cattle at the time the loan was procured.

We think it is narrowing the question below the material charges of the indictment to hold as the instruction directed. The representation that the cattle were bought from Becker & Degan was material, we think.

As we have already said in substance, the prosecuting witness was thereby led to believe that his money was to be used in paying for cattle bought of Becker & Degan, and he might be willing to advance money for such purpose when he would not for the mere purpose of paying defendant's debts for cattle generally, which the defendant owned, and that might be subject to other liens.

The fifth instruction offered by the defendant was as follows:

"(5)  The court further instructs that it is a rule of law that the burden of proving the guilt of the defendant is upon the prosecution; and if the jury are not satisfied from

the nature and character of the evidence, or from a want of evidence in the case, as to whether the defendant is guilty as charged in the indictment, then you should find the defendant not guilty."

This was modified by the court substituting for what is there said, the following:

"(5)   The entire burden of proving the guilt of the defendant is upon the prosecution."

The particular thing complained of is the omission of the clause in the original instruction, of the phrase " or from a want of evidence in the case."

We do not see why the substituted instruction did not, fairly considered, include the whole of the proposition contained in the instruction as offered.   "A want of evidence" is manifestly less than the "entire burden of proof," and is covered by it.

To review all the criticisms of counsel for plaintiff in error in detail, as to some of the other refused instructions, is too burdensome to indulge in.   We have examined them all and need only refer in a general way to some of them. Some of them have already been substantially discussed with reference to other instructions, and others of them relate to matters immaterial to the real merits of the case. Still others relate to the giving of the chattel mortgage made to secure the money advanced, or to the chattel mortgage that was previously made to Loeben and Rothschild, which in our view were in no manner the gist of the offense charged.

We think the offense charged was made out by the evidence contained in the record, and that the judgment of conviction was proper.

The judgment will therefore be affirmed.