THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* KIRK A. LANDON, Defendant.

City Magistrate's Court of City of New York, Borough of Manhattan, Second District, April 13, 1933.

*Frederick E. Klein,* for the plaintiff.

*Lewis Landes,* for the defendant.

AURELIO, City Magistrate. This is a hearing on a summons with the usual stipulation of counsel on both sides that, if in the opinion of the court the facts warrant it, a complaint may be ordered and defendant held to answer.

It is charged that the defendant committed the crime of grand larceny by means of false pretenses.

It appears that the defendant was the owner of a half interest in, and was a director, vice-president and general manager of the Union Mutual Casualty Insurance Corporation (hereinafter called the corporation), a corporation engaged in insuring owners of taxicabs against damages for personal injuries, etc.

A week or two before complainant purchased defendant's interest therein for $32,000, defendant gave complainant a statement in writing of the financial condition of the corporation as of December 31, 1930, showing a net surplus of $112,201.34.

The sale was consummated on February 11, 1931.

The agreement signed by the parties provides that " as an inducement " to complainant to purchase defendant's interest aforesaid " and to further induce " complainant to deliver to defendant the $32,000 aforesaid (consisting of negotiable bonds), defendant guaranteed, warranted and represented that the corporation was at the time of the execution of the agreement solvent, " such solvency to be evidenced by the financial report of the New York State Department of Insurance of the financial affairs of the Corporation, which shall show that, as of December 31, 1930, the surplus of the Corporation over and above its liabilities, is not less than $50,000 * * *." No mention is made of the aforesaid statement and the net surplus of $112,201.34 referred to therein.

The agreement further provides that in the event the corporation is found insolvent by the New York State Department of Insurance, then and in that event certain adjustments were to be made by defendant and in no event should defendant's obligation to complainant exceed the sum of $25,000.

Mr. Patten, examiner of the Insurance Department, with many years of experience, testified that his examination of the corporation showed a deficit of $47,943.01, and this sum, plus the surplus of not less than $50,000 guaranteed, warranted and represented in the agreement, makes the vast difference of $97,943.01, misrepresented by defendant.

The financial statement is substantially correct, except that the reserve for outstanding losses is reported as $484,965.85, whereas the Insurance Department fixes this reserve in the sum of $633,977.21; thus making a difference of $149,011.36 misrepresented by the defendant, according to the figures shown in the financial statement. The reserve for outstanding losses is determined by reading and examining all the pending suits and claims filed against the corporation (there being about 6,000), and placing thereon a reasonable and probable value which each case has, and this " is strictly a question of individual opinion," as testified to by Mr. Patten. Mr. Patten also testified that his report on the condition

of the corporation was "merely an estimate of the approximate condition" and "nobody can tell * * * (exact condition) until you get a financial adjudication of the entire matter."

Notwithstanding this testimony, I am of the opinion that if this difference of opinion is so great, a question of fact may be presented as to whether the value of the claims was not minimized by defendant with the felonious intent to defraud.

Taking the net surplus of $112,201.34, given in the statement, with the deficit of $47,943.01, as found by the Insurance Department, makes a total difference of $160,144.35, misrepresented by defendant; or if we take the net surplus of not less than $50,000 guaranteed, warranted and represented in the agreement with the said deficit of $47,943.01, we still have a total difference of $97,943.01, misrepresented by defendant. The disparities in these figures are sufficiently large, in my opinion, in the absence of any explanation by the defendant to raise a question of fact as to whether or not they were arrived at dishonestly and with the felonious intent to defraud. It may be that the defendant can adequately explain how these figures were arrived at, so as to show the absence of a felonious intent.

I am satisfied that the defendant was sufficiently identified with the activities of the corporation as to place him in a position to know, with a certain degree of reasonableness, the financial condition of the corporation, or if he did not know, as has been claimed, then he should not have been so reckless as to guarantee, warrant and represent that the corporation was solvent and that its surplus was not less than $50,000.

"A reckless statement of a fact of which the narrator is ignorant may be equivalent to a statement he knows to be false." (2 Whart. Crim. Law [12th ed.], § 1494.)

The financial status of the corporation was peculiarly within the knowledge of the defendant and his associates. Complainant necessarily had to rely on the defendant's representations; he could not be expected to make an examination of a corporation of this size. The attorney representing the complainant could do no more than exact from the defendant representations in writing that the corporation was solvent, etc. This he did.

In *Watson* v. *People* (87 N. Y. 561, at p. 566), MILLER, J., said: "When there is an absolute representation, false and untrue and known to be such, the purchaser of property has a right to rely upon it. * * * He has a right to rely upon the representation, and common honesty and morality demand that the fraudulent dealers should not screen themselves by the excuse that the party

could have detected the fraud if he had not relied on the representation made."

It is claimed on behalf of defendant that the representation of solvency, etc., " is one of opinion and not of fact " (Defendant's brief, p. 45). Our Court of Appeals has held otherwise. In *People ex rel. Gellis* v. *Sheriff* (251 N. Y. 33, 36) POUND, J. (at p. 37), sums up the law on this subject as follows: " At the same time, it has been said in *People* v. *Peckens* (153 N. Y. 576, 591) that a statement of value by the seller may, even in a criminal case, be an affirmation of a fact when the value is peculiarly within the knowledge of the person making it, is known to be untrue and is intended to induce the purchaser to forbear from making inquiries which he otherwise would make. Similarly it has been held that mere promissory statements as to what will be done in the future, not in themselves actionable, may be deemed to be false statements of material existing facts if such statements falsely represent the promisor's state of mind. The state of a man's mind is a fact which may be the subject of a false representation. (*Deyo* v. *Hudson*, 225 N. Y. 602, 612, 613.)

" It is thus conceivable that even in New York a false statement of value may be held to be a false statement of an existing fact and not mere opinion or seller's talk, the distinction resting on the mental state of the one who makes the false statements and the effect thereof on the conduct of him to whom they are made. The distinction, if it exists, is somewhat technical. but it may be sufficient to present a question for the jury."

Defendant claims that the agreement is controlling and that in the event of insolvency complainant should be relegated to his civil remedy. I am of the opinion that the clause in the agreement providing for certain adjustments in case of insolvency is not a defense, the People contending that such a provision was inserted as a shield to protect the defendant from possible criminal prosecution.

" Nor does the fact that there was a warranty relieve the prisoner from the effect of the false pretenses under which he obtained the money. It would not exempt the prisoner from the consequence of a false pretense made as to an existing additional material fact, because it was combined with a promise for the future." (MILLER, J., in *Watson* v. *People, supra*, 567.)

This point was also decided in *Jackson* v. *People* (18 Ill. App. 508, 512), wherein MORAN, J., said: " The promise in the written warranty, to take back the horse and refund the money, may, it is true, have an influence and operate on the mind of the purchaser, but, if the false representation of matters of fact contained in the

writing or in the colloquy, which precedes the execution of the writing, in fact constitute the main inducement to the purchase, there may be a conviction, notwithstanding the fact that the promise of the warranty operated upon the purchaser."

This case was affirmed in 126 Illinois, 139, wherein, at page 145, the court said: " If the rules contended for are to be applied in such case, every person selling property, and obtaining money therefor by false pretenses, can escape the penalty provided by law by simply inducing the purchaser to accept a bill of sale in which some warranty may be inserted, and thus, by a show of fairness, be enabled the more effectually to perpetrate the fraud."

This is not a case of A merely selling B his business with a proviso that in the event of insolvency he would make good the difference. Here defendant goes a step further — he guarantees, warrants and represents the corporation to be solvent.

" But it is not necessary to a conviction that the false pretense alleged should have been the sole inducement by which the property in question is parted with, if it had a preponderating influence sufficient to turn the scale, although other considerations operated upon the mind of the party." (2 Whart. Crim. Law [12th ed.], § 1442.)

The evidence satisfies me that defendant's guaranty, warranty and representation of solvency " had a preponderating influence sufficient to " induce complainant to part with his money.

Complainant also claims that the defendant fraudulently concealed from the Insurance Department's examiners the files of a number of claims pending against the corporation in both its New York and Massachusetts offices, in order to further minimize its liabilities. The evidence adduced on this point was not convincing, so I have disregarded it. It may be that on a trial more satisfactory evidence can be given on this point.

On March 28, 1933, the court was about to render its decision when counsel for the defendant made an application to reopen the hearing and receive additional testimony on the ground that since the last day upon which the court received testimony in this matter a financial report was filed in the liquidation of the said Union Mutual Casualty Insurance Company dated December 14, 1932, by the Superintendent of Insurance of the State of New York, in which the estimate of liabilities made by Examiner Patten was reduced by the very substantial amount of $95,000, and further that since that time a great number of the claims which were then still outstanding and estimated have become fixed and determined.

In considering this application the court must not lose sight of the fact that claims against an insurance company which is in liqui-

dation are generally settled for a much smaller sum than against a going concern. Therefore, I do not think such evidence would be of much help.

The application is denied.

About thirty hearings have been held before me, considerable testimony taken, and the defendant has not offered any evidence as to how or by what method the corporation's reserve for outstanding losses was arrived at. Furthermore, there is no proof before me that the figures arrived at by the Insurance Department's examiner were not fairly accurate.

Upon the record before me I believe that a crime has been committed and that there is sufficient cause to believe the defendant guilty thereof. (Code Crim. Proc. §§ 207, 208.)

In deciding to hold defendant, I have in mind that a committing magistrate is not required to exact that same full measure of proof necessary upon the trial of an indictment. (*People* v. *Shenk*, [Sp. Sess.] 142 N. Y. Supp. 1081; *People ex rel. Willett* v. *Quinn*, 150 App. Div. 813.)

A complaint for grand larceny is ordered, and the defendant is held to await the action of the grand jury.