THE NORTHERN TRANSPORTATION COMPANY

*v.*

ISAAC H. McCLARY.

1. CARRIER—*liability of transfer company to owner of goods shipped.* The owner of a lot of flour shipped the same to Chicago, to be carried from there by the Northern Transportation Company to Ogdensburg, N. Y., and thence by rail to Barton's Landing, Vt., paying the freight to Chicago, taking the carrier's receipt. The clerk of the transportation company receipted for the same to the company with whom the contract was made, upon the representation that the flour had arrived at the warehouse of defendant, and that the freight had been prepaid, but testified that the flour was never in fact received. It seems that, owing to a mistake in marking the direction of the car containing the flour, the same was received by another warehouse company, whose house was near that of defendant. It was contended, under those circumstances, the defendant was not liable for the loss, but that the owner's remedy was against the first carrier for the mistake in marking the car, which led to the loss: *Held*, that, while the first carrier was guilty of negligence, the defendant was also guilty of negligence in giving the receipt without first ascertaining that the flour had arrived at its warehouse, for which it was liable to the owner; and that the question of ultimate liability was one to be settled by the two companies. themselves.

2. SAME—*measure of damages for non-delivery of goods.* Where goods are shipped for transportation, and are lost, or not delivered, the proper measure of damages is the value of the same at the place of destination, and interest, deducting the unpaid cost of transportation; and when such cost has been paid either wholly or in part, it is erroneous to include the same in the assessment of the damages.

3. SUPREME COURT—*reversal with direction to enter judgment for the proper amount.* Where the only error in a cause was that the court allowed an item in the assessment of damages which was not proper, the trial being by the court, and there was no dispute as to the amount, on reversal, the cause was remanded with direction to the court below to render judgment for the proper amount as found by this court.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. WAITE & CLARKE, for the appellant.

Messrs. MONROE, BISBEE & GIBBS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Isaac H. McClary, the appellee, on the 21st of October, 1870, purchased of N. O. Clark & Co., of Janesville, Wis., 100 barrels of flour, and paid therefor $500. Clark & Co. paid the freight on the flour to Chicago, and delivered the same to the Chicago and Northwestern Railway Company, to be shipped on said railway to Chicago, and thence by water on the propellers of the Northern Transportation Company to Ogdensburg, N. Y., and thence by rail to Barton's Landing, Vt., taking the following receipt:

"Chicago and Northwestern Railway Co.

"Janesville, Wis., Oct. 21, 1870.

"Received from Clark & Co. one hundred barrels of flour, branded 'Clark's,' consigned to I. H. McClary, Barton's Landing, Vermont. P. P.—Care N. T. Co. Dock, Chicago. To be forwarded to Chicago station upon the terms and conditions of the published tariff of the company.

"S. A. BALDWIN, Agt."

On the 24th of October, 1870, the transportation company gave the railway company the following receipt:

"Chicago Station, Oct. 24, 1870.

"Received of the Chicago and Northwestern Railway Company, in good order, the following packages of merchandise: (From Janesville Station, W. B. No. 360, Car No. 902.)

| Marks. | Articles. | Weight. |
|---|---|---|
| I. H. McClary. | 100 Brls. Flour. | |
| Barton's Landing, | "*Clark's*." | D. H. |
| Vermont, | | of |
| N. T. Co. Dock. | | Wheat. |

ROBT. DIEFENDORF, Agt.

L.

The flour never reached Ogdensburg, and was a total loss to the appellee.

For the non-delivery of this flour, he brought suit against the Chicago and Northwestern Railway Company and the Northern Transportation Company, in case. A trial was had by the court without a jury, who found the issue in favor of the appellee and against the Northern Transportation Company, and assessed the damages at $700, and found the Chicago and Northwestern Railway Company not guilty.

The Northern Transportation Company appeals.

The appellant claims that, under the evidence, the judgment should have been against the railway company, and not against itself, making the point that the flour never was delivered to the appellant, but that it was delivered by the railway company by mistake to A. T. Spencer & Co., at Chicago.

It appears, from the evidence, that the dock and warehouse of Spencer & Co. immediately adjoined the dock and warehouse of the appellant, but that they were separated by a solid wall, and that the railway company had the same side-tracks running in the rear of both of these warehouses; that in delivering freight to these warehouses, the car containing freight for the transportation company would be marked on one or both its sides "N. T. Co." and the one having freight consigned to Spencer & Co. would be marked on one or both sides "Spencer's Dock," and that it was the practice to place the car on the side-track in front of the warehouse for which it was thus marked, or as nearly so as practicable. The shipping clerk of the transportation company, who signed the receipt, stated that it was presented to him to be signed by the clerk of the railway company, who stated to him that the flour had actually arrived at the warehouse of the transportation company, and that the freight on it had been prepaid, and that he signed the receipt in sole reliance on such statement, having no personal knowledge of the arrival of the flour.

The evidence renders it probable that the flour was unloaded in the night time, and placed in Spencer & Co.'s

warehouse from a car marked on its side "Spencer's Dock," and that the difficulty has arisen from the car being so marked on its side by mistake, "Spencer's Dock," instead of "N. T. Co."

The flour lay in Spencer & Co.'s warehouse, unclaimed by any one, for several months.

Any mistake in regard to the receipt, or as to the rightful delivery of the flour, was not discovered either by the transportation company or the railway company, until January or February, 1871.

If the railway company was guilty of the mistake claimed, of wrongly marking the direction of the car, the transportation company, too, was guilty of negligence in signing the receipt without ascertaining, by actual observation, whether the flour had arrived at its warehouse. Had its shipping clerk, who signed this receipt, looked to see whether the flour had arrived, as it was his duty to do, instead of indolently reposing upon the statement of the railway company's clerk, the supposed mistake in marking the car would have been discovered and rectified on the spot; whereas, by negligently giving out the receipt, the railway company was misled, to its injury, to rest in the belief that the flour had been rightfully delivered.

Moreover, this is really a contest between two carriers, which the appellee should not be required to settle. His right of recovery from one or the other is conceded. Having established a clear *prima facie* liability against the appellant, it seems but just that he should be allowed to enjoy the recovery he has obtained, without being harrassed further to determine a question of liability as between the companies themselves.

As respects the right of recovery, we do not think it a case where the finding of the court should be disturbed.

Appellant makes another point, that the damages are excessive, which we think to be well taken. It is admitted on both sides that the measure of damages is the value of the

flour at the place of destination, and interest, deducting the unpaid cost of transportation, of $105, from Chicago to the place of destination, and which appears to be the rule recognized by the authorities. Sedgwick on Meas. of Dam., marginal page 356; *The Gal. and Chic. U. R. R. Co.* v. *Rae*, 18 Ill. 489.

Appellee insists, further, that there should be added to such value the item of $50, the cost of transportation of the flour from Janesville to Chicago, which was prepaid. The only evidence touching the market value of the flour at the place of destination was the appellee's statement that he sold the flour *to arrive* for $700.

Appellant insists that is no evidence of the market value of the flour, but we think it may be taken as evidence tending to show such market value. Regarding it as such, then the counsel for appellee give a tabular statement of the mode by which the judgment may be supported, and which they understand to be the way it was made up, which is as follows:

| | |
|---|---|
| Appellee testifies that he sold the flour for........ | $700.00 |
| Freight paid from Janesville to Chicago........... | 50.00 |
| | $750.00 |
| Less freight from Chicago to Barton's Landing..... | 105.00 |
| | $645.00 |
| Interest to time of trial..................... ... | 55.00 |
| Balance ....................................... | $700.00 |

The item of $50 in this calculation we regard as improper; that it should not be added to the $700 as paid out for part of the transportation of the flour, since the rule that the market value at the place of destination, with interest, is the measure of damages, excludes, as we view it, any sum paid for transportation to such place.

If the cost of transportation has been paid, it is not to be added to the market value; if it has not been paid, then it

should be deducted from such value. We regard the cost of the transportation of the flour from Janesville to Chicago as forming an element of its market value at Barton's Landing, Vt., and of course it should not be *added to* such value. As that must be done in order to support the judgment, in the most favorable view that can be taken for the appellee the judgment appears to be clearly excessive in the sum of $54.50, being the amount of the above item of $50 with the interest which was allowed on it.

A recent statute provides that, in case of a partial reversal, the court shall give such judgment or decree as the inferior court ought to have given, and for this purpose may allow the entering of a *remittitur*, either in term time or vacation, or remand the cause to the inferior court for further proceedings, as the case may require.

Under the provisions of this act—there being no verdict of a jury in the case, the cause having been tried by the court without a jury—the judgment is reversed and the cause remanded, with direction to the court below to render a judgment in favor of the appellee, against the appellant, for the sum of $645.50 and costs.

*Judgment reversed.*