Cox v. Vise.

## COX v. VISE.

EVIDENCE: *Conspiracy to defraud; Declarations of insolvent debtor after assignment.*

In an action by the assignee of an insolvent merchant against an officer, to recover a stock of goods assigned for the benefit of creditors, and subsequently seized by the defendant under an order of attachment obtained against the assignor by one of his creditors, on the ground of fraud in disposing of his property, where there is evidence having a tendency to show that the assignor and the plaintiff confederated to defraud the former's creditors, the declarations of the assignor tending to show the intent of the parties to the assignment and made while he was engaged in the prosecution of their common design, are admissible against the plaintiff, although made after the execution and delivery of the deed of assignment.

[For the declarations admitted in this case see the opinion.—Rep.]

APPEAL from *Scott* Circuit Court.

R. B. RUTHERFORD, Judge.

*Duval & Cravens*, for appellant.

1. The assignment was strictly in conformity with law. There is no taint of constructive fraud in the terms and provisions of the deed, and the burden was on defendant to show actual fraud on the part of Hamilton

Cox v. Vise.

participated in by plaintiff. Review the evidence and contend the circumstances do not show fraud.

The conversation with Childs, after the assignment was not admisiible, to affect plaintiff's title.

Fraud must be proved, and is never presumed.  See 85 *N. Y.*, 464; 40 *Id.*, 226; 39 *Id.*, 200.

*Clendenning & Read*, for appellee.

The question of fraud was submitted to the jury, upon fair instructions, and there was abundant evidence to sustain the verdict.

Review the evidence and instructions, and contend that substantial justice has been done.

BATTLE, J.  J. M. Hamilton, being the owner of a stock of goods and much involved in debt, assigned and transferred them and certain book accounts to G. Cox for the benefit of his creditors.  This was on the 6th of August, 1884.  On the 8th of the same month, creditors of Hamilton caused the goods to be attached.  The ground of attachment was, Hamilton had disposed of his property with the fraudulent intent to cheat, hinder and delay his creditors.  After the goods were attached, this action was institued by the assignee against the officer, C. M. Vise, who had seized them, to recover possession thereof.

In the trial of the action evidence was adduced tending to prove the following state of facts:  In 1881, L. D. Gilbreath and Hamilton entered into a partnership for the purpose of doing a mercantile business at Waldron, in Scott county, in this state.  In a short time afterwards, Allen Brazier became a partner.  In July, 1883, Brazier withdrew from the partnership, receiving seven hundred dollars for his interest.  In January, 1884, Gilbreath, so

he states, sold his interest in the partnership assets to Hamilton for eight hundred dollars, on a credit, taking his note therefor, and Hamilton continued the business. About ten days before the assignment he (Hamilton) received from McClury & Co., a large quantity of boots and shoes, and from Schwab Clothing Co., considerable clothing. In about three days after this G. Cox, the assignee, visited him to see if he would sell to him his stock of goods. He (Cox) believed he could buy. Why, he does not state. At all events he saw Hamilton about it several times. Instead of selling to him, Hamilton proposed to Gilbreath, who is his uncle, to let him have his stock in payment of what he owed him so far as it would go. Gilbreath replied, that if his wife wanted the goods, she might take them and realize what she could. Mrs. Gilbreath agreed to take the stock of goods at their invoice price and to see that he received a credit therefor on his indebtedness to Gilbreath, on condition she could sell them to Jeff. Cox at fifty cents on the dollar on their invoice price. On the next day, G. Cox, who desired to purchase the stock of Hamilton, purchased from Mrs. Gilbreath for Jeff. Cox, at fifty cents on the dollar, having negotiated for them through Hamilton, and Jeff Cox gave his note for the purchase money payable in twelve months. On the day next after the sale to Cox, B. Baer, a creditor of Hamilton, caused the goods to be attached to secure Hamilton's indebtedness to him. On that day, or the next, the sale to Cox, at his request, was rescinded and the goods were delivered to Mrs. Gilbreath, and the sale to Mrs. Gilbreath was cancelled and the goods were delivered to Hamilton. The indebtedness to Baer was settled by Hamilton and Gilbreath giving their note for the amount sued for; and the attachment was discharged. Hamilton then set about making an assignment for the benefit of his creditors. While the deed of assignment was in course of preparation, Gilbreath was

asked by Hamilton what he owed him, and he told him to insert one thousand dollars, " as that would be as much as the goods would bring." The deed was drawn and G. Cox, who had been so anxious to buy the goods and finally bought for Jeff Cox, was made the assignee, and Gilbreath a preferred creditor for one thousand dollars, the deed providing that he should be first paid. The indebtedness, as shown by the deed, was $5,198.70. The assignee took possession of the goods, but found among them but few new goods. All these transactions—the sale to Mrs. Gilbreath and Cox, the rescisions thereof, deliveries of possesson of the goods and the assignment—took place in the course of five days, or less time.

The books of account surrendered by Hamilton to his assignee were in bad condition. Many of the accounts were marked " settled in full." In many instances the words " settled in full " had been erased, but still left intelligible in some cases, and in others not. About one-half of the accounts for 1884 were marked " settled in full " in pencil. The words " settled in full," written under the accounts, were partially erased in about one-third of them, the books showing an effort to erase had been made with partial success. They show that $275.24 had been collected in July, 1884, within a short time before the assignment.

J. P. Childs, a witness for the defendants, was allowed to testify, over the objection of plaintiff, that a short time after the assignment, and after the goods were attached, he had a conversation with Hamilton, in which he asked Hamilton how much he owed him, and Hamilton replied nothing and that he did not care what became of his debts; that his creditors were trying to beat him, and he would rather his debtors would have what they owed him than his d—d creditors; that he also asked him about one Foyster's debt and he replied Foyster was a poor man, and he would rather

Cox v. Vise.

he would have his debt than his d—d creditors who were trying to beat him; that Hamilton came to him in November, 1884, and told him that he had traded his (Childs') account to Pat Duncan; that Duncan needed the money and he would like for him (Childs) to pay what he owed him; that Hamilton went to his books, and the books showed that the account was settled on the 1st of July; that the account was made before that time, and that he paid it.

Other evidence was introduced in the trial, which is unnecessary to mention here. The bill of exceptions does not show it contains all the evidence adduced.

The bill of exceptions contains some instructions given to the jury, but inasmuch as they present no questions that have not heretofore been decided by this court, it is not necessary to state what they are. Construed together they contain no error prejudicial to appellant.

The jury returned a verdict in favor of the defendant. Plaintiff filed a motion for a new trial, which was overruled, and he appealed.

The only question necessary to be noticed in this opinion is, was the testimony of Childs competent evidence? The statements made by Hamilton testified to by Childs were made after the execution and delivery of the deed of assignment. It is well settled that the declarations of a party to a sale, transfer, or assignment, going to impair the vested rights of one claiming under him, and made after the sale, transfer, or assignment, are inadmissible. The reason of the rule is: "After a vendor has parted with his property he has no more power to impress the title, by either his acts or his declarations, than a mere stranger." But there is an exception to this rule. It is, "that when a fraudulent combination is established, the acts and declarations of any one of the parties thereto, while engaged in the prosecution of the common design, may be proved against the others." They

*EVIDENCE: Conspiracy to defraud: Declaration of insolvent debtor after assignment.*

are competent evidence to show the intention of the parties. Before such decarations are admissible under the exception to the rule, "a foundation must be first laid, by proof, sufficient in the opinion of the judge, to establish, *prima facie*, the fact of a conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact." Evidence of "a very slight degree of concert or collusion" will be sufficient. Mr. Greenleaf, in treating of this subject, lays down the rule as we have stated it, and adds : " Sometimes, for the sake of convenience, the acts or declarations of one alleged conspirator are admitted in evidence before sufficient proof is given of the conspiracy, the prosecutor undertaking to furnish such proof in a subsequent stage of the cause. But this rests in the discretion of the judge, and is not permitted, *except under particular and urgent circumstances*, lest the jury should be misled to infer the fact itself of the conspiracy from the declarations of strangers." It is obvious from the rule and exception, as stated, that no reversible error, or error prejudicial to an appellant, can be committed, if, subsequent to the admission of the evidence of the declarations, evidence tending to establish the conspiracy or confederacy were afterwards introduced. If evidence of the declarations was admissible in any order, as shown by the evidence, no injury could have been done by not having observed the order. But, as said by Mr. Greenleaf, the ordinary practice should not be departed from, " except under particular and urgent circumstances." *Place v. Minster,* 65 *N. Y.,* 89 ; 1 *Greenleaf on Evidence,* [*14th Ed.*], sec. 111 ; *Cuyler v. McCortney,* 33 *Barb.,* 165 ; *Waterbury v. Sturtevant,* 18 *Wend.,* 360 ; *Hartman v. Diller,* 62 *Penn. St.,* 43 ; *Clayton v. Anthony,* 6 *Rand.,* 285 ; *Cuyler v. McCartney,* 40 *N. Y.,* 221 ; *Abney v. Kingsland,* 10 *Ala,* 361 ; *Stewart v. Thomas,* 35 *Mo.,* 206 ; *Ogden v. Peters,* 15 *Barb.,* 560 ; *Wynne v. Glidewell,* 17 *Ind.,* 449 ; *Bump. on Fraudulent Con-*

*veyances, 3d ed., pp.* 585–588; *Humphries v. McGraw,* 9 *Ark.,* 99, 107; *Miner v. Phillips,* 42 *Ill.,* 123; *Taylor v. Robinson,* 2 *Allen,* 562; *Winchester v. Charter,* 97 *Mass.,* 142; *Bates v. Ableman,* 13 *Wisc.,* 650; *Babb v. Clemson,* 12 *S. & R.,* 328; *Clement v. Moore,* 6 *Wall.,* 299; *Myers v. Kinzie,* 26 *Ill.,* 36; *Peck v. Crouse,* 46 *Barb.,* 155.

There was some evidence to show that Hamilton and his assignee confederated to defraud Hamilton's creditors; and that the declarations of Hamilton were made while engaged in the prosecution of their common design. The evidence, although unsatisfactory, is sufficient to sustain the verdict of the jury in this court. The bill of exceptions failing to show that it contains all the evidence adduced in the trial, it would be presumed, if it did not contain what it does, that the action of the court in admitting Child's testimony and the verdict of the jury were sustained by sufficient evidence.

Judgment affirmed.