ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. DESHONG.

Opinion delivered February 13, 1897.

EVIDENCE—COMPETENCY.—Evidence which is incompetent when standing alone may be rendered competent by subsequent testimony.

APPEAL—NEW TRIAL.—Error in excluding evidence is waived by failure to make the exclusion a ground of motion for new trial.

SAME—WHEN ERROR CURED.—Error in admitting oral evidence of the time at which a railway agent agreed that horses shipped over its road would be delivered at their destination under a written contract is cured by an instruction that the only obligation of the company as to the time of forwarding the horses was to do so within a reasonable time.

DAMAGES—MARKET VALUE.—The measure of damages for injuries to horses in shipment is their depreciation in value by reason of such injuries at the market of their ultimate destination, although beyond the line of the railroad company liable for the injuries, where it undertook to carry the horses with the knowledge that they were to be delivered at such point.

Appeal from Clark Circuit Court.

RUFUS D. HEARN, Judge.

*Dodge & Johnson* for appellant.

The court erred in ruling out the written contract of shipment. 46 Ark. 238, 240–6; 50 *id.* 397. The clauses exempting from liability were reasonable and valid. Cases *supra;* 57 Ark. 112; 11 So. Rep. 791; 24 S. W. Rep. 355; 18 S. E. Rep. 88; 59 Fed. Rep. 879; 8 C. C. App. 341; 24 S. W. Rep. 354; 21 *id.* 77: 78 Tex. 374; 14 S. W. Rep. 666. It is legitimate for a carrier by contract to provide a reasonable time within which notice of claim for loss, etc., shall be given as a condition for liability. 21 Wall. 264; 54 Miss. 566; 28 Am. Rep. 388; 5 Hurl. & Norm. 867; 30 S. W. Rep. 1113; *ib.* 500; 39 N. E. Rep. 426. Plaintiff's statement that defendant was to deliver the horses at Tyler by Thursday was hearsay, and contradictory of the written contract, and was incompetent. 27 N. E. Rep. 588; *ib.* 208. As the contract was silent as to the time of shipment, the law imports an obligation to ship within a reasonable time, and without unnecessary delay. 91 Ill. 613; 31 Minn. 85; 16 A. & E. R. Cas. 149; 27 *id.* 36. The court erred only in its charge as to the measure of damages. The market value at Texarkana, the place of delivery, should have governed, and not that of Tyler, Texas.

*Scott & Jones* for appellee.

The contract excluded was exactly like the one in 57 Ark. 127, and contained the unreasonable stipulations. The written contract being void, parol testimony was admissible to show the place and time of delivery. There is no error in the instructions. 56 Ark. 594; U. S. Rev. Stat. sec. 4386; 12 S. E. Rep. 363; Thompson, Charging the Jury, sec. 82.

BATTLE, J.  Deshong brought this action against the St. Louis, Iron Mountain & Southern Railway Company.  He stated in his complaint that the railway company entered into a contract with him on the 21st of March, 1893, and thereby agreed, for a consideration paid to the defendant, to carry safely and in a reasonable time twenty-four horses (a car load) from the city of St. Louis to the city of Texarkana, and to deliver them at the latter place to a connecting carrier for carriage to Tyler, in the state of Texas, their place of destination; that the horses were delivered to the railway company at 6 o'clock p. m. on the 21st day of March, 1893, but "were not delivered at Texarkana to the connecting carrier until 10 o'clock p. m. March 24, 1893; that there was an unreasonable delay in the transportation of said stock from St. Louis to Texarkana, and that, during all the time said animals were being transported, they were confined in the car in which they were loaded, without water or being unloaded for exercise or rest, and without other food than that placed by plaintiff in the car at St. Louis; that thereby the said horses became, from their long unreasonable confinement, feverish, resulting in crowding, pressing and trampling, one against the other, causing the same to be damaged."  The complaint then set up specifically the kind of injuries received, which consisted of bruises, scratches and cuts upon the various horses in the car, and prayed for damages in the sum of $600.

"The defendant, answering, admitted that the animals were received at six o'clock p. m. on March 21, 1893, under contract to be carried by defendant to Texarkana, Arkansas, there to be delivered to a connecting carrier for transportation to Tyler, Texas.  It denies that there was any delay in shipment for any unreasonable length of time, or longer than the schedule time of

defendant's train. It denied that said stock was unreasonably or negligently kept upon its cars during said journey, but charges that defendant railway company had made all necessary arrangements to unload, water, rest and feed said stock at its yards in Little Rock, a point nearly half way between St. Louis and Texarkana, when the plaintiff specifically and specially urged and requested the defendant not to unload, rest and feed his stock, or to delay the same at Little Rock or elsewhere, but that they be only watered at said point, and carried on to their destination without delay; that the request of said plaintiff was complied with; that the horses were watered fully and sufficiently at Little Rock, as requested by plaintiff, and immediately forwarded to Texarkana. Defendant further denied the specific injuries alleged, and charged that the same, if there were any, were not caused by any act of carelessness or negligence on the part of the defendant, but that the stock were bruised, scarred or disfigured, if injured at all as charged, by the innate viciousness of said animals, and not from any act of omission or carelessness on defendant's part. Defendant further denied that plaintiff was damaged in the sum of $600, or in the sum specifically named in his complaint, and denied all responsibility for the injury to said stock."

A jury tried the issues of fact, and returned a verdict in favor of the plaintiff for $400. The court rendered judgment in his favor against the defendant for that amount, and the railway company appealed.

The following facts were proved by the evidence adduced at the trial: On the 21st of March, 1893, the appellee delivered to appellant, in St. Louis, twenty-four horses to be transported over its railway to Texarkana, and there delivered to a connecting carrier, to be forwarded to Tyler, Texas, their place of destination. They were loaded in a car of appellant, and left St.

Louis at 8.05 o'clock p. m. on the 21st of March, 1893, and arrived at Little Rock, Ark., on the 23d of March, at 3.05 a. m. (when it should have arrived at 7.35 p. m. on the evening before if it had been on regular time), and arrived at Texarkana at 3.15 on the afternoon of the 23d of March, 1893, and were unloaded into the stock yards at 3.30 of the same evening. They remained on the car from the time they were placed in it until they reached Texarkana, where they arrived in a damaged condition. There was evidence tending to prove that the damage was occasioned by the negligence of the appellant, and that the extent of it was as much as $400, the amount of the verdict.

In the course of the trial, the depositions of three witnesses were read as evidence to show that the horses arrived at Tyler in a damaged condition, and the extent of the injuries. Appellant objected. Evidence was afterwards adduced, tending to show that the horses were damaged before they left Texarkana, and were not injured thereafter. This made the evidence as to their condition when they reached Tyler competent. The order in which the evidence was adduced should have been reversed, but no injury was done on account of the time at which it was presented. *Cox* v. *Vise*, 50 Ark. 283. *Competency of evidence.*

While appellee was testifying in behalf of himself, he stated that the contract between himself and appellant as to the transportation of the horses was in writing. The contract contained limitations upon the liability of appellant as a common carrier. The court permitted a portion of the contract to be read as evidence, but excluded the limitations. The appellant excepted, but did not make the exclusion a ground of his motion for a new trial, and thereby waived his exception. *When error waived.*

While testifying, appellee stated that the agent of appellant said that, if he would ship his horses over *When error cured.*

their railway, "they would deliver them at Tyler by Thursday evening." To so much of this testimony as relates to the delivery of the horses the appellant objected. As the contract was in writing, it should not have been admitted. But its evil effects were avoided by an instruction given to the jury in the following words: "6. The court instructs the jury that defendant was not bound to ship plaintiff's horses by any special train, nor in any given time, nor in the speediest manner, nor did it contract that its trains would run on schedule time. Its only obligation as to the time of forwarding this was to forward them in a reasonable time; and if they find from the testimony that said horses were delivered at Texarkana within a reasonable time after their shipment at St. Louis, defendent would not be responsible for damages occasioned by their being on the car for such time."

As to proof of market value. The court, over the objection of the defendant, instructed the jury as follows: "If the jury find for the plaintiff, the measure of damage is the difference in the actual cash market value of the animals injured immediately before and immediately after said injury, with 6 per cent. per annum interest thereon from the date of said injuries." The objection of appellant to this instruction is, it did not inform the jury by what market they should be governed in determining the value of the horses and the damage to them in transportation, whether the market of St. Louis, Little Rock, Texarkana, or Tyler. It says the market of Texarkana should have governed, because it was the place where it was to deliver the horses to the connecting carrier. But this does not seem to us to be a correct measure. The depreciation of the horses by reason of the injuries according to the market of Tyler, the ultimate destination,—the cost of transportation having been paid,—was the actual loss sustained by appellee.

This was the natural consequence of the injuries according to the usual course of things, and is as direct and proximate as it would have been had the appellant undertaken to deliver the horses at Tyler. The appellant undertook to carry them to Texarkana, with the knowledge that they were to be delivered to their owner at Tyler; and the loss sustained according to their market value at the latter place was in the reasonable contemplation of both parties. For these reasons the damages occasioned by the negligence of the appellant should have been assessed upon the basis of the market value of the horses at Tyler. *Sisson* v. *Cleveland & T. R. Co.*, 14 Mich. 489; *East Tennessee, etc., R. Co.* v. *Johnston*, 75 Ala. 596; *Cutting* v. *Grand Trunk R. Co.*, 13 Allen, 381, 389; *Fox* v. *Boston & Maine R. Co.*, 148 Mass. 220; *Northern Trans. Co.* v. *McClary*, 66 Ill. 233; 3 Sutherland, Damages (2d Ed.), sec. 932. See *N. Y. etc. R. Co.* v. *Estill*, 147 U. S. 591, 614–617.

The value of the horses as it would have been had they been transported with proper care, and their depreciation on account of the injuries, were estimated according to the Tyler market by all the witnesses, who testified in respect thereto, except the appellee, and he did not state by what market he was governed. According to his testimony, he was damaged at least $630, and the jury assessed them at $400. So it is apparent the jury were not governed by his estimate. The fair inference is that they assessed the damage upon the basis of the Tyler market. That being true, the appellant was not prejudiced by the omission to inform the jury that they should be governed by the market at Tyler.

Judgment affirmed.