Gulf, Colorado & Santa Fe Railway Company et al. v. J. F. and K. F. Cunningham.

Decided June 17, November 25, 1908.

**1.—Carriers—Connecting Lines—Charge.**

In an action against connecting lines of carriers on a through shipment of live stock, under contract limiting the liability of each to injuries occurring on its own line, it was proper to direct a verdict in favor of those defendants as to whom there was no evidence as to delay or default in the transportation by them.

**2.—Same—Injuries Developing Later.**

In an action against connecting carriers of live stock, the liability of each being limited to injuries sustained on its own line, it was proper to charge that one was not liable for the results of weakness and injuries inflicted by the preceding carrier, though they were not manifest when received from such previous carrier, and developed only during the transportation by the one whose liability was considered in such charge.

**3.—Requested Charge—Absence of Evidence.**

It was not error to refuse a requested charge relieving defendant from liability upon a certain issue, where there was no evidence raising such issue.

**4.—Requested Charge Embraced in Instructions Given.**

It was not error to refuse a charge the principle of which was embraced in the instructions given.

**5.—Same.**

A general instruction that defendant was only required to furnish a rea-

sonably safe car for transporting live stock was sufficient to justify the refusal of a requested one that it was not required to furnish a "stable car."

**6.—Same.**

A general charge that injuries to live stock by rough handling would render defendant liable only where due to his negligence held sufficient to justify the refusal of a more specific requested instruction to the same effect.

**7.—Shipment—Oral and Written Contract.**

Evidence as to an oral contract for transportation of live stock, made with a station agent, and its ratification by superior officers, held admissible though a written contract was afterwards signed. Missouri K. & T. Ry. Co. v. Belcher, 88 Texas, 549, and Gulf, C. & S. F. Ry. Co. v. Dinwiddie, 21 Texas Civ. App., 344, distinguished.

**8.—Evidence—Value—Opinion.**

Evidence considered and held to show witnesses to be qualified to testify to the value of live stock in the condition in which they observed them.

**9.—Railways—Connecting Lines—Through Shipment—Venue.**

Connecting lines of carriers, having agents in this State, transporting live stock on a through shipment, but with the liability of each limited to damages on its own line, may be jointly sued in any county where either does business, and damages apportioned between the defendants. (Act of March 13, 1905, Laws, 29th Leg., p. 29.)

**10.—Connecting Carriers—Pleading.**

Petition in an action against connecting carriers charging them with negligence generally in the transportation, and with the resulting damages, is sufficient without alleging the effect of the negligence of each.

**11.—Pleading—Cattle Pens—Negligence. '**

Allegations of the negligence of carriers in furnishing defective and improper stock pens for cattle in transit, held sufficient.

**12.—Evidence—Declarations of Employes.**

Declarations of railroad employes as to the carrier being out of food for stock, made while unloading them at stock pens for feeding, were properly admitted.

**13.—Evidence—Carriers—Damages—Notice.**

In a through shipment of live stock over several connecting roads, each limiting liability to his own line, evidence that plaintiff gave notice of the ultimate destination of the shipment to the agents of one of the intermediate carriers, whose undertaking was only for transportation to its terminus and delivery to the next connecting line, was competent. Showing knowledge of the market to which the shipment was consigned did not vary the terms of the written contract; it was relevant to the measure of damages to which such intermediate carrier was liable for its default in transportation. For similar reasons evidence of the market value of the animals at their ultimate destination was admissible against such intermediate carrier.

**14.—Carriers of Live Stock—Feeding and Watering—Contract—Damages— Contributory Negligence.**

An undertaking by a shipper accompanying his live stock to himself feed and water the animals in transit was valid and effective against him only in case the carrier furnished him adequate facilities therefor; and his omission, on the carrier's failure to do so, to procure feed and water elsewhere would not, under the circumstances, preclude him from recovering the damages caused by such default of 'the defendant.

**15.—Carriage of Live Stock—Suitable Car—Acceptance by Shipper.**

The shipper of live stock does not, by acceptance of an unsuitable car fur-

nished him, when no choice between that and a proper one is offered, relieve the carrier from its liability for failure to perform its duty to furnish a safe and suitable car.

### ON MOTION FOR REHEARING.

**16.—Proof of Agency Declarations.**

· Though agency cannot be proved by declarations of the alleged agent, they are admissible, in connection with other evidence, to prove that fact.

**17.—Evidence—Harmless Error.**

Rulings admitting testimony are not ground for reversal where the same facts are established by other evidence—especially that introduced by the complaining party.

Appeal from the County Court of Brown County. Tried below before Hon. A. M. Brumfield.

*J. W. Terry* and *A. H. Culwell,* for appellant, Gulf, C. & S. F. Ry. Co.
*Baker, Botts, Parker & Garwood* and *C. L. McCartney,* for appellants Texas & N. O. Ry. Co. and Louisiana Western Ry. Co.

*Oscar Calloway* and *Wilkinson & Lee,* for appellees.

RICE, ASSOCIATE JUSTICE.—Appellees instituted this suit in the County Court of Brown County against the Gulf, Colorado & Santa Fe Railway Company, The Texas & New Orleans Railway Company, the Louisiana Western Railway Company, Morgan's Louisiana & Texas Railroad & Steamship Company, and the Louisville & Nashville Railroad Company, to recover damages growing out of a shipment of 28 head of horses from Mullen, Texas, to Brewton, Ala., in February, 1905; alleging that all of said defendants were corporations, with agents or officers in this State; that the Gulf, Colorado & Santa Fe Railway Company had an agent in Brown County, Texas, that the T. & N. O. Ry. Co. had its principal office in Harris County, Texas; that the said Louisiana & Western Railway Company and Morgan's Louisiana & Texas Railroad & Steamship Company were foreign corporations, incorporated under the laws of Louisiana, but that each had agents representing them in the city of Houston, Harris County, Texas; and that the Louisville & Nashville Railroad Company was also a foreign corporation, incorporated under the laws of Kentucky, with an agent in Dallas County, Texas; that at the date of said shipment, said several lines of railway were operating their respective roads, giving the terminals of each, extending from Mullen, in Mills County, Texas, the initial point of said shipment, to Brewton, Ala., its ultimate destination; but that at said time, each of said lines of railway connected at its point of origin directly with the terminus of the other, so that they together formed a continuous line of road from Mullen, Texas, to Brewton, Ala., and were then engaged in operating railroad trains over their respective lines of road for transportation of freight thereon; that on the 20th of February, 1905, plaintiffs entered into a contract with said Gulf, Colorado & Santa Fe Railway Company, by the terms of which it agreed to furnish plaintiffs at Mullen, Texas, with a reasonably safe stable car, for the transportation of one carload of horses from Mullen to Brewton, Ala., to which place said defendant and its several connecting lines, by the terms of said contract,

bound themselves to carry said horses; it was further agreed that the freight charges on said horses from Mullen to New Orleans, was $126.50, which was paid by plaintiffs, and that the charge from New Orleans to Brewton, Ala., was $40 additional; that it was agreed that said horses were to be billed through to Brewton from Mullen, all of which facts were known to and approved by the superior officers of said Gulf, Colorado & Santa Fe Railway Co. having authority and control over said matter, whose names were to plaintiffs unknown; that said shipment of horses was tendered to, received and transported by each of said several defendant companies over their respective lines of railway, with full knowledge of the facts of said contract, and with full knowledge of their destination, and that they were designed for sale upon their arrival at Brewton, Ala., whereby they all became bound to transport said horses with reasonable care, speed and diligence, and to deliver the same to appellees within a reasonable time thereafter, in a reasonably good condition at their ultimate destination, notwithstanding which said shipment of horses was delayed in transit, roughly handled, inadequate facilities furnished for feeding and watering them enroute, the feeding pens being allowed to become muddy and unfit for use, as well as a failure to furnish feed, *by reason of all of which said horses were injured and greatly damaged.*

The appellant, Gulf, Colorado & Santa Fe Railway Company, answered by general and special exceptions, general denial and specially plead the provisions of the live stock contract under which the horses were shipped and those provisions which limited the liability of the carrier to such loss or injury as occurred on its own line, and charged that there was no loss or injury while said stock was in its possession and that the same were promptly delivered to the T. & N. O. Ry. Co. at Beaumont. It likewise plead under its contract that said stock were not to be transported in any specific time or delivered at destination at any particular hour for any particular market, and that the shippers contracted to take care of said stock enroute; and that ample opportunity was afforded for this purpose.

The Texas & New Orleans Railway Company and the Louisiana & Western Railway Company answered by general and special exceptions and general denial, and specially pleaded the provisions of the live stock contract under which the horses were shipped, which, among other things, limited the liability of the carrier to such loss or injury as occurred on its own line, and such as was due to its own negligence, charging that there was no loss or injury while the stock was in their possession and that the same were promptly carried and delivered, after being received from the Gulf, Colorado & Santa Fe Railway Company at Beaumont, to New Orleans, La., and delivered in good condition to its connecting carrier at said point, and that the shippers agreed to take care of said stock enroute; denied partnership with other lines and that they were bound to transport said shipment to its final destination, but only over its own line.

Morgan's Louisiana & Texas Railroad & Steamship Company, and Louisiana & Western Railway Company, each filed their pleas of privilege to be sued in Harris County, which were overruled, and each answered by adopting the answer of their codefendant, the T. & N. O. Ry. Co., except as to some immaterial matters.

The Louisville & Nashville Railway Company answered by general demurrer, general denial and by special answer alleging, in substance, that they received said shipment from their codefendants at New Orleans, and transported the same carefully and without delay, delivering the same to consignees at Brewton, Ala., in the same condition as when received by them, and likewise plead the benefits enuring to them under the contract originally made with the plaintiffs by the Gulf, Colorado & Santa Fe Railway Company, wherein their liability was limited to injuries occurring on their own line.

There was a jury trial and verdict in favor of the appellees as follows: $500 against the Gulf, Colorado & Santa Fe Railway Company, $267 against the T. & N. O. Ry. Co. and $100 against the L. & W. Ry. Co., with 6 percent interest from date of judgment. Verdict was likewise rendered in favor of M. L. & T. R. R. & S. S. Co., and L. & N. Ry. Co., being as to the latter in response to a peremptory charge, and judgment rendered in accordance therewith, from which this appeal is prosecuted by the Gulf, Colorado & Santa Fe Railway Company, the T. & N. O. Ry. Co. and the Louisiana & Western Railway Co.

We will first discuss the errors assigned by the Gulf, Colorado & Santa Fe Railway Co., the other two appellants having filed a joint brief.

By its first assignment of error this appellant urges that the court erred to its prejudice in instructing a verdict in favor of the Louisville & Nashville Railroad Co., contending that the charge therein was on the weight of the evidence and usurped the province of the jury, because the liability of said company under the evidence raised an issue of fact, which should have been submitted to the jury. We have carefully examined the record and find no evidence showing or tending to show that the Louisville & Nashville Railroad Company was negligent in and about said shipment, or that the horses were injured while in its hands, but it appears from the testimony of one of the plaintiffs who accompanied said shipment to New Orleans, and who was present at Brewton, Ala., when it arrived, and who received and unloaded the horses there, that their condition at the time they arrived was not materially different from what it was at New Orleans; that they changed cars at New Orleans, and that the car used in their shipment from New Orleans to Brewton was a 36-foot car. It was shown by the employes of said company handling said shipment between New Orleans and Brewton, that there was no delay and no rough handling, and there was no evidence contravening this testimony. It was therefore the duty of the court to instruct a verdict in behalf of the Louisville & Nashville Railroad Company.

By its second assignment of error, this appellant insists that the court erred in its charge, wherein it instructed the jury that the T. & N. O. Railway Co. was not responsible for any injuries resulting to plaintiffs' horses before they were received by said company, nor for any injuries resulting to said horses after they were received by it which were the direct result of their having been weakened or otherwise injured, if at all, while in the custody of the Gulf, Colorado & Santa Fe Railway Company, provided they believed they had received any injuries or were weakened while in the custody of said Gulf, Colorado & Santa Fe Railway Co., and that said injuries did not develop or become manifest until after they

were delivered to the T. & N. O. Ry. Co., contending that said charge was on the weight of the evidence. We do not think the charge is subject to the complaint made against it, and, in our judgment, it announced a correct proposition of law, the same being an interstate shipment, with limitation of liability on the part of each company to injuries occurring on its own line, it certainly can not be contended that it was error to instruct the jury, as was done in this case, that the T. & N. O. was not liable for injuries that may have occurred on the line of the G. C. & S. F. Ry. Co. This assignment is therefore overruled.

The court did not err in refusing to give to the jury special charge No. 3, requested by the Gulf, Colorado & Santa Fe Railway Company to the effect that they should not assess damages against it on account of muddy stock pens at Silsbee, nor in refusing to give special charge No. 7, relating to insufficient stock pens at Somerville, because the evidence did not raise any issues as to damages at said places.

We do not think there was any error in the refusal of the court to give special charge No. 4, as requested by this appellant, to the effect that even though they should find that the horses were delayed at various places along its line, and that said delays resulted in damage to them, still such damages could not form the basis of a verdict against it, unless they further found that said delays were unreasonable or negligent, because, at the instance of said appellant, the court had instructed the jury that a railway company was not responsible for injuries resulting to live stock while in its custody caused by delays, unless the same were due to the negligence of such company; and further, that it would not be responsible for delays that were reasonably necessary in the handling of its trains and making changes at division points.

By its fifth assignment of error, this appellant complains that the court erred in refusing to give its special charge No. 5, to the effect that it was not required to furnish plaintiffs a stable car, even though the jury should find from the evidence that the plaintiffs requested said company's agent to furnish such a car, but that said company was only required by law to furnish a reasonably safe car. By its general charge the court had instructed the jury that it was the duty of defendants respectively, while said horses were in their custody and control, to use ordinary care to furnish a reasonably safe and suitable car for their transportation, and that a failure so to do would be negligence, and to find a verdict for plaintiffs, if said horses were injured and impaired in their market value by reason of such failure. We think the general charge of the court was sufficient upon this subject, and that it was not error, on account thereof, to refuse said special charge.

There was no error in refusing to give charge No. 6, requested by this appellant, as shown by its sixth assignment of error, to the effect that the company would not be responsible for injuries sustained by reason of the inherent nature and vicious propensities of the horses, for the reason that the trial court gave a charge substantially covering this phase of the case.

By its eighth assignment of error this appellant claims that the court erred in refusing to give its special charge No. 14, which, in effect, instructed the jury that even though they may find from the evidence that the horses in question received the injuries, as alleged, on account of

rough handling, "still, you must believe from the evidence that such rough handling was due to negligence of defendants as defined in the charge; and, further, that said rough handling, if any, was the direct and proximate cause of such injuries, and, unless you do so believe, you can not find any damages on account of said rough handling against this appellant." This charge was refused, and we think properly, because special charge No. 9, requested by appellant and given by the court, covered this phase of the case, which, in effect, told the jury that "you are instructed that before plaintiffs can recover against it, you must find from the evidence that appellant was negligent, and that plaintiffs received some injuries to their horses, and that the negligence of the defendant, if any, was the proximate cause of such injury."

By its ninth assignment of error this appellant insists that the court erred in allowing K. F. Cunningham, one of the plaintiffs, to testify to a conversation had by him over the phone with Johnson, the agent of defendant's company at Brownwood, relative to this shipment, in which it was claimed that Johnson made a contract with him by which he agreed that appellant would transport said horses from Mullen, Texas, to Brewton, Ala., and would furnish a stable car, suitable for said purpose, within which to convey them, contending by its proposition under this assignment that it was incompetent in this case to prove any contract made between appellees and appellant's agent at Brownwood, since it appeared from the evidence that the horses were shipped under a written contract executed by appellant's agent at Mullen. It will be recalled that the plaintiffs charge in their petition that the contract of shipment was made with the agents at Brownwood and at Mullen, both stations on this appellant's road, setting out the contract in detail; and they further alleged that the contract was known to the superior officers of said company, and, with a knowledge thereof, the same was ratified by them. It is further charged that, in accordance with said contract so made, the car was furnished to plaintiffs at Mullen and shipment of the horses made therein. It was in evidence by said Johnson that he recalled the telephone conversation with plaintiff with reference to said car, at which time he was station agent at Brownwood; that the car was to be furnished at Mullen; that he did not remember to what point the horses were to be shipped, but he thought beyond the State; that he placed plaintiffs' order with the train office at Temple, which office handles the transportation of cars upon said road; that he did not send the car from Brownwood. Plaintiff testified that when he arrived at Mullen with the horses the agent at that place met him and asked if it was Cunningham; that he answered "yes, whereupon he told me that our car was there." The trial court in its charge to the jury upon this subject instructed them, that it was the duty of defendants, while said horses were in their control and custody, to use ordinary care to furnish a reasonably safe and suitable car for their transportation. *Since there were allegations in the pleading, as we have seen, to the effect that the contract of shipment, claimed to have been made with the agents at Brownwood and Mullen was known to and ratified by the superior officers of the defendant company, we think it was permissible to show,* first, what the contract was, if any, made between appellees and the company's agent; and then to show that the same was ratified and acted upon by the superior officers

of the company. Therefore, in our judgment, this evidence was admissible. We do not believe that this ruling contravenes the doctrine announced in Missouri, K. & T. Ry. Co. v. Belcher, 88 Texas, 549; Gulf, C. & S. F. Ry. Co. v. Dinwiddie, 21 Texas Civ. App., 344, and Gulf, C. & S. F. Ry. Co. v. Jackson & Edwards, 99 Texas, 393, cited by appellant.

In the first case cited it was held that where it was sought to hold the company liable for delay in the shipment of cotton seed products from Sherman to Gainesville, by reason of notice of the importance of the shipment given to the Gainesville agent, which he failed to communicate to the Sherman agent, that the company could not be held liable for his default, by reason of the fact that there was no authority in the Gainesville agent to act for the company relative to said shipment from Sherman; and, further, because there was no duty devolving upon the station agent at Gainesville, who received said notice, to convey the same to the agent at Sherman.

In the case of Gulf, C. & S. F. Ry. Co. v. Dinwiddie, *supra,* it was held that the Railway Company was not bound by the contract of its agent at one station to furnish cars for shipping cordwood at another station, in the absence of authority on the part of the agent to make such contract, or in the absence of notice to and ratification by the company. It clearly appearing inferentially from said last authority that if the company had notice of said contract and had ratified the same, then it would have been held liable for its failure to furnish the cars by reason thereof. We think this case is distinguishable from the cases above cited, because here notice and ratification on the part of the company of the acts of the Brownwood agent were pleaded, and that therefore the evidence objected to was clearly admissible under said allegations.

The tenth assignment of error is overruled for the reasons stated in disposing of the third and seventh assignments.

We do not believe there is any merit in the question raised by appellant's eleventh assignment of error, concerning the admissibility of the testimony of the witness Weems. The objection, we think, goes rather to the sufficiency than to the admissibility of said evidence.

We overrule the thirteenth assignment of error complaining of the action of the court in permitting witnesses Nelson, Blake and Barnhill to testify relative to what in their judgment would have been the reasonable value of said horses if they had arrived at Brewton in reasonably good condition, because these witnesses all testified that they saw said horses upon their arrival, and were acquainted with the market value of horses at Brewton; and it was not necessary that said witnesses should have accompanied the shipment in order to express an opinion as to what said horses would have been worth had they arrived at their destination in a reasonably good condition.

The Louisiana & Western Railway Company, by its first assignment of error, urges that the court erred in sustaining an exception of plaintiffs to its plea of privilege to the jurisdiction of the court. The petition alleged a joint contract of shipment, and that all of the defendants had agents in the State, which was also admitted by the plea, and it was also alleged that the shipment passed over the lines of all the defendants, and that a part of the injuries occurred on the line of the Gulf, Colorado & Santa Fe Railway Company, the initial carrier, which extends through

Brown County. The plea was otherwise full, negativing the exceptions of the venue statute, but not the facts above set out. Under the acts of 1905, p. 29, amending the act of 1899, p. 214, we think the judgment of the court overruling this plea of privilege was correct. The act in question states that "whenever any passenger, freight, baggage or other property has been transported by two or more railroad companies, express companies, steamship or steamboat companies, transportation companies or common carriers of any kind or name whatsoever, or by any assignee, lessee, trustee or receiver thereof, or partly by one or more of such companies, or common carriers, and partly by one or more assignees, lessees, trustees or receivers thereof, operating or doing business as such common carriers in this State, or having an agent or representative in this State, suit for damages or loss, or for any other cause of action arising out of such carriage, transportation or contract in relation thereto may be brought against any one or all of such common carriers, assignees, lessees, trustees or receivers operating or doing business in this State, or having an agent or representative in this State, in any court of competent jurisdiction in any county in which either of such common carriers, assignees, lessees, trustees or receivers operate or does business, or has an agent or representative," further providing for the apportionment of damages recovered in such suits between defendants not shown to be partners, on the request of either, etc. It was alleged and proven that this appellant had an agent in Brown County, hence the suit as against all of the defendants was properly brought there. See also Atchison, T. & S. F. Ry. Co. v. Williams, 86 S. W., 38, and authorities cited under the statute above quoted, in McIlwaine's Ann. Dig. of Texas, p. 226.

The other appellants, Texas & New Orleans Ry. Co. and Louisiana & Western Ry. Co., by their second assignment of error say that the court erred in overruling their second special exception to plaintiff's petition, which was addressed to the insufficiency thereof, on the ground that it did not show which road or roads furnished said car or cars, did not state on what line or what road the injuries occurred, and that it failed to show with sufficient clearness which defendant or defendants were guilty of the negligent acts charged against it, by reason of which want of particularity in said allegations it was unable to tell wherein it was sought to be held liable, and unable to answer thereto.

In International & Great Northern Railroad Company v. Jones, 91 S. W., 611, in which a writ of error was denied by the Supreme Court, it was held that a petition in an action against the initial, connecting and terminal carriers for injuries to a shipment of cattle, which charged the carriers with negligence generally in transporting said cattle, and which alleged the damages resulting therefrom, was sufficient, without alleging what effect the negligence of each carrier had on the cattle, though the shipper's agent accompanied the shipment.

The same doctrine was recently reaffirmed in San Antonio & A. P. Ry. Co. v. Martin, 108 S. W., 981, and in which a writ of error was likewise denied.

We therefore hold that it was not necessary for plaintiffs to have been more specific in their allegations in this respect. But the petition does show that the car was ordered from the Gulf, Colorado & Santa Fe Rail-

way Company to be furnished at Mullen; that the horses were loaded in it at said point and carried in it from that point to New Orleans. It states the names of the stations where the delays occurred, the length of the delays, the names of the stations where defendant unloaded plaintiffs' horses for feed and rest, and at what points they failed to provide facilities for such purpose. They state in detail the injury to the horses, and added that they were unable to state at just what particular places the acts of rough handling occurred, owing to the fact that a part of said shipment occurred at night, and that plaintiffs were not sufficiently acquainted with the places where such rough handling occurred to identify and designate them, but they allege that such rough handling was frequent and continuous between the town of Mullen and the city of New Orleans.

Said appellants claim there was error in overruling their fifth special exception to the claim of $50 damages to said horses on account of alleged shrinkage in market value thereof, due to improper and unsuitable pens at Beaumont, claiming that the same was insufficient and stated no cause of action, in that it failed to allege any act of negligence on the part of defendant causing said injuries, and failed to allege what the market value of said horses would have been but for said injuries. The petition did allege that defendant's pens at Beaumont were without troughs and water, were in such muddy and sloppy condition that said horses could not be fed in them, and that on this account, as well as for other reasons pleaded, said horses suffered injuries and were damaged, all of which things were alleged to be due to the negligence of the defendants.

It seems to us that the allegations of the petition in this respect were sufficient to show that the muddy condition of said pens caused damages and injury to said horses and was owing to the negligence of the defendants. We therefore overrule said assignment.

Appellants' sixth, seventh and eighth assignments of error are overruled for the reasons stated in overruling their second assignment.

It was not error, as contended by appellants' tenth assignment of error, for the court to permit the witness Cunningham to testify what a policeman at Beaumont said about the company's having no feed for his stock, because it appeared that said party was a yard policeman at Beaumont, in the service of appellant, T. & N. O. Ry. Co., and that he was working with appellants' crew in loading and unloading the horses, and was in charge of said crew, and, therefore, evidence of what he said while in the performance of his duties was admissible and binding upon appellants.

There was no error in overruling appellants' eleventh and twelfth assignments of error, complaining of the action of the court in permitting the plaintiff Cunningham to testify that he told the agent of the T. & N. O. Ry. before his horses left Beaumont that they were going to Brewton, Ala., and the purpose for which they were being shipped to said point, because, as appellees contend, while appellant had contracted to carry the horses only to New Orleans, yet if they knew at the time the contract was entered into that the ultimate destination of said horses was Brewton, Ala., it will be presumed that the contract were made in view of the market at the last named place, and that it was contemplated by the parties to said contract that in the event of a breach thereof, the measure of plaintiffs' recovery would be controlled by that market. Such

being the case, it was proper to admit evidence of appellants' knowledge of the final destination of the horses. Such evidence would not vary the terms of the contract of shipment, and would not require appellants to carry the horses beyond New Orleans. The evidence disclosed that the agent who made the contract with the plaintiff knew that Brewton was the final destination of the horses, and agreed to bill them through to said point, collecting freight therefor to New Orleans, stating that the horses would be unloaded at New Orleans and delivered to the L. & N. road. The plaintiff likewise testified that he told the T. & N. O. agent at Beaumont that he was going to Brewton with the horses. (Gulf, C. & S. F. Ry. Co. v. Eddins, 7 Texas Civ. App., 116; Reese v. Texas & P. Ry. Co., 11 Texas Civ. App., 514; St. Louis, I. M. & S. Ry. Co. v. DeShong, 39 S. W., 260; Texas & P. Ry. Co. v. White, 35 Texas Civ. App., 521; Chicago, R. I. & T. Ry. Co. v. Carroll, 36 Texas Civ. App., 459; Texas & P. Ry. Co. v. Dishman, 41 Texas Civ. App., 250; 6 Ency. Law & Prac., 631.)

We overrule the thirteenth and fourteenth assignments of error, the first of which complains of the action of the court in permitting the witness Weems to testify, over the objection of the defendants, relative to the market value of the horses at Brewton, Ala., and the second of which complains of the action of the court in refusing to give special charge No. 6, to the effect that the defendants, not having undertaken to carry plaintiffs' stock to their ultimate destination, and there being no evidence of market value at New Orleans, they should find a verdict in favor of appellants, for the same reasons set forth in disposing of the eleventh and twelfth assignments.

The fifteenth, sixteenth, seventeenth and eighteenth assignments of error are overruled, because it was permissible for said witnesses to have shown the value of the horses at Brewton, it appearing that they were experienced shippers, well acquainted with the market value of horses at Brewton at the time of their arrival there, and the fact that they stated that they knew their average value at Brewton would not affect the admissibility of their evidence in this respect.

For the reasons stated in overruling the first assignment presented by the Gulf, Colorado & Santa Fe Ry. Co., appellants' nineteenth assignment is overruled.

We overrule the twentieth, twenty-first, twenty-fourth and twenty-fifth assignments of error, as presented by appellants, because we do not believe that plaintiffs were precluded from recovery, as contended by appellants, because they did not undertake to procure feed and water for their stock at Beaumont upon the failure of appellants to furnish adequate facilities therefor, because, under the conditions surrounding plaintiffs at the time, as shown by the record, it was unreasonable to require them to procure feed and water elsewhere; nor were they barred from recovery by reason of the fact that they permitted appellants to unload their horses in muddy pens, because, while said shipment was made under a special contract requiring plaintiffs to feed, water and care for their horses enroute, still, the same was only reasonable and valid so long as defendants furnished plaintiffs with reasonable facilities for doing so; and, no reasonable facilities having been furnished at Beaumont, said provision of said contract was unreasonable and void as to that place,

and the duty then devolved upon appellants to feed, water and care for said stock, and they were liable for failure so to do. (Ft. Worth & D. C. Ry. Co. v. Daggett, 87 Texas, 322; Gulf, C. & S. F. Ry. Co. v. Dunn, 78 Texas, 1080; 2 vol. Hutch. on Carriers, 3d ed., sec. 641.)

In the Daggett case, *supra,* the Supreme Court say: "We are further of the opinion that the special contract, as well as said act of Congress, relieved the carrier of the duty in the first instance of feeding and watering at such points at which it furnished reasonable facilities to the shipper to do so, but that in the absence of such facilities at any point, the contract would be unreasonable at such point, and the carrier would be liable for any damages resulting from the failure to feed and water at such point."

The court did not err, as complained of in appellants' twenty-third assignment of error, in refusing to give appellants' special charge No. 4, to the effect that if Cunningham knew the defective condition of the car before loading his horses thereon, and that they would necessarily receive injuries while in transit, then, as a matter of law, he was guilty of contributory negligence in shipping said horses therein, and could not recover.

We think appellees are correct in their contention that the Railway Company is bound to furnish a safe and suitable car for the transportation of freight, and is not relieved from liability for not so doing, even if the shipper examined the car and did not object to its fitness. This disposes of appellants' twenty-fourth and twenty-fifth assignments of error, as they raise the same question. It appears from the testimony of Cunningham that he objected to said car, both at Mullen and at Beaumont. (Galveston, H. & S. A. Ry. Co. v. Silegman, 23 S. W., 298; Hunt v. Nutt, 27 S. W., 1031; San Antonio & A. P. Ry. Co. v. Dolan, 85 S. W., 303; St. Louis, I. M. & S. Ry. Co. v. Marshall, 86 S. W., 802; St. Louis & S. F. Ry. Co. v. Brosius, 105 S. W., 1131; 2 Hutch. on Carriers, 3d ed., secs. 498-9.)

After a full and careful review of all the questions presented by appellants, we are constrained to believe that no reversible error is shown. The judgment of the court below is, therefore, in all things affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

This case was affirmed at the last term of this court, since which time a motion for rehearing has been filed by and on behalf alone of the Texas & New Orleans Railway Co. and the Louisiana Western Railway Co., the Gulf, Colorado & Santa Fe Railway Co., against whom judgment was likewise rendered, not joining therein.

In addition to what was said in the original opinion, we think the testimony of K. F. Cunningham as to what the policeman said to him at Beaumont, was admissible, because it clearly appeared from the record that at the time said statement was made to Cunningham said policeman was in fact in charge of the horses in the company's yards, directing and controlling their movements. Besides this, it appeared on cross-examination of this witness by the defendants themselves that he was acting for and on behalf of the company in the matter in which he was then engaged. While, as a rule, we understand that agency can not be proven

by the declarations of the agent, still, the same has been held to be a circumstance, in connection with other facts, that will tend to prove that he was in fact an agent. (Texas Compress Co. v. Mitchell, 7 Texas Civ. App., 234; Wheeler & Wilson Mfg. Co. v. Crossland, 2 App. C. C. (Willson), 63; Book V, Rose's Notes, p. 1453; Missouri P. Ry. Co. v. Rountree, 2 App. C. C. (White & W.), 339.) Where there is evidence from which a jury could find agency, the declarations or admissions made during agency in regard to the transaction connected therewith, are those of the principal. (White v. San Antonio Water Works Co., 9 Texas Civ. App., 465.) And the agency of the policeman having been shown at the instance of the defendant on cross-examination, it is in no attitude to complain. This case does not fall within the rule announced by Judge Connor in St. Louis & S. F. Ry. Co. v. Easley, 94 S. W., 207, because the chief reason for which the evidence in that case was excluded was because the statement made by the conductor did not accompany the act then being done. Nor did it fall within the rule announced by Chief Justice Fisher in Gulf, C. & S. F. Ry. Co. v. Batte, 107 S. W., 633, for the reason that in that case there was no evidence whatever to show that the party making the declaration was in the employ of the company or acting for it, nor was there any other proof of agency offered.

In Meacham on Agency, sec. 714, it is stated, in effect, that where the statements or declarations of the agent are made at the time of the transaction, or so soon thereafter as to come within the rule of res gestae, the same are admissible. Here the declarations were made at the very time of the occurrence to which they related.

Apart from this, we do not believe if there was error in the admission of this testimony it could have been hurtful to appellants, for the reason that it had been abundantly shown by the uncontradicted evidence of the plaintiffs themselves that the yards were very muddy and sloppy, and that there were no troughs within which to feed said horses.

Nor do we believe that there was any error in permitting the plaintiff to testify that he told the agent of the T. & N. O. Company before his horses left Beaumont, that they were going to Brewton, Ala., as contended by appellant. The only objection made to the introduction of said testimony, as shown by appellants' brief was that said evidence would vary and contradict the terms of the contract. There was no objection made that the company had had no notice of the ultimate destination of this shipment. Besides, it was alleged in plaintiffs' pleading that a contract was made with the Gulf, Colorado & Santa Fe, by which said horses were to be shipped from Mullen, Texas, by way of defendants' several railways, their ultimate destination being Brewton, Ala.; and it was alleged that said Texas & New Orleans Railway Co., with full knowledge of the aforesaid contract, and with full knowledge that the destination of said horses was the town of Brewton, Ala., and that they were designed for market upon their arrival there, accepted the same to be so transported. We therefore think this evidence was admissible under the pleadings.

Relative to appellants' contention that it was not permissible to allow plaintiff K. F. Cunningham to testify what he received for certain of the horses sold by him after reaching Brewton, we desire to say that even if this were error that appellants are not in a position to complain there-

of, because other witnesses were allowed to testify, and did testify, without objection, substantially to the same thing, to wit: C. M. Barnhill testified that Howard Nelson and himself bought several head of the horses subsequent to the time of their arrival, stating the amounts that he paid plaintiffs therefor. Defendants themselves, on cross-examination of the witness Black, proved that the horses after their arrival at Brewton were sold for an average price of $25 each; and by another witness Joe Barnhill, the T. & N. O. Ry. on cross-examination showed that plaintiffs sold certain of the horses during the month of March after their arrival there, and the prices received for them; so that if it was error, as complained of by appellants, the same was rendered harmless by their own subsequent proval of the same facts.

We can not believe that there was any error in the court's peremptorily instructing a verdict in behalf of the L. & N. road, because there was no evidence in the record to warrant a judgment against said road, and the plaintiffs themselves admitted that their horses had suffered no injury or damage while in transit upon said road. Besides this, we can not see how appellants are in an attitude to complain of this action of the court, even if it were error to have so charged the jury because the jury were specially charged that in the event there was a verdict for plaintiffs no damages could be assessed against any defendant, except that which occurred on its own line, etc. The plaintiffs, it seems to us, would alone have been the parties entitled to complain, and no complaint is made by them, they having expressly testified, as above, that no material injury to the horses occurred during their transit over said L. & N. Railway.

Believing that no such error has been pointed out in appellants' motion for rehearing as would justify a change in our opinion, said motion for rehearing is in all things overruled.

*Motion overruled.*