PECOS & N. T. RY. CO. et al. v. DINWIDDIE et al.†

(Court of Civil Appeals of Texas. Amarillo. Jan. 27, 1912. Rehearing Denied Feb. 23, 1912.)

1. CARRIERS (§ 222*) — INJURIES TO LIVE STOCK—OWNERSHIP.

Where a carrier receives live stock for transportation, and bills the same in the name of the shipper, the carrier is liable to him for injuries to the stock from its negligent failure to perform its duty in transporting the same, notwithstanding persons, other than the shipper, had some interest in the stock, whether it was received for transportation under an express written contract of carriage, or under an implied contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 952; Dec. Dig. § 222.*]

2. EVIDENCE (§ 244*) — LIVE STOCK — TRANSPORTATION—STOPPING FOR FEED AND WATER—EVIDENCE.

Where a carrier armed its conductor in charge of a cattle train with blanks to be signed by the shipper, requesting that the stock remain in the cars 36, instead of 28, hours, as authorized by the federal statute, the carrier thereby constituted the conductor its agent for that purpose, so that conversations showing the reasons prompting the shipper to sign such a request, and declarations by the conductor when he procured the same, were admissible on the question of the shipper's negligence in failing to stop the cattle for feed and water at one point, rather than another.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 916–936; Dec. Dig. § 244.*]

3. CARRIERS (§ 228*) — TRANSPORTATION OF CATTLE—NEGLIGENCE—EVIDENCE.

Where plaintiff pleaded a failure to feed and water his cattle at W., and that the cattle were fed and watered at E., over plaintiff's protest, followed by a general allegation of negligence and damages because of the acts complained of, evidence that damage to the shipment was increased as the result of the cattle

† Writ of error denied by Supreme Court.

being fed and watered at E. instead of W. was admissible.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

**4. TRIAL (§ 252*)—TRANSPORTATION OF LIVE STOCK—STOPPAGE FOR FEED AND WATER—INSTRUCTIONS.**

Plaintiffs did not refuse to permit the unloading of their cattle at W. for feed and water, and would have had them unloaded there but for the assurance of defendants' employés that if they were not so fed and watered, and plaintiffs would sign a 36-hour permit, the shipment would reach destination without being unloaded for feed and water in transit. *Held*, that the court properly refused to charge that, if plaintiffs were negligent in not permitting the shipment to be unloaded at W. instead of E., and additional injury resulted therefrom, the jury should find for defendants as to such additional injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

**5. CARRIERS (§ 230*) — TRANSPORTATION OF LIVE STOCK—INSTRUCTIONS.**

An instruction that, if it was the carrier's duty to unload plaintiffs' cattle for feed and water at W. instead of E., and by ordinary care and dispatch, defendants could not have transported the cattle to destination within the 36-hour time limit, then the measure of plaintiffs' damages would be the difference between the damages to the cattle, had they been unloaded at W., and the damages they sustained by being unloaded at E., if they were in fact damaged, was properly refused, as eliminating plaintiffs' claim for damages, if any, because of defendants' negligence, other than that arising from failure to feed and water at W. instead of E.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

**6. TRIAL (§ 260*)—REFUSAL OF INSTRUCTIONS—INSTRUCTIONS GIVEN.**

It is not error to refuse requested charges covered by instructions given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**7. APPEAL AND ERROR (§ 203*)—EVIDENCE—OBJECTIONS — MOTION TO STRIKE — EXCEPTIONS.**

Evidence received by deposition will not be reviewed on appeal, where the record contains no bill of exceptions to the court's action in overruling a motion to suppress, and does not show that objections were urged to the introduction of any of the evidence when offered, or that any motion was made to strike out any part thereof after it was introduced.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1064; Dec. Dig. § 203.*]

**8. APPEAL AND ERROR (§ 1051*)—EVIDENCE—PREJUDICE.**

Erroneous reception of certain evidence by deposition of a witness is not reversible error, where another witness testified to the same facts without objection, and there was no opposing evidence in the record to show that he was not testifying from memory.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**9. APPEAL AND ERROR (§ 1040*) — REVIEW—PREJUDICE.**

Where the court's charge confined plaintiffs' recovery to the proper measure of damages, the overruling of a special exception to plaintiffs' petition, in so far as it sought to recover double damages, was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

**10. CARRIERS (§ 228*) — TRANSPORTATION OF CATTLE—DAMAGES—EVIDENCE.**

Evidence as to the effect of holding plaintiffs' cattle and hogs on the cars an additional 24 hours was not inadmissible, because the proof did not show that the cattle and hogs were actually confined in the cars as much as 24 hours over the usual time; it appearing that the total delay in transit was as much or more than 24 hours.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

**11. CARRIERS (§ 228*) — TRANSPORTATION OF LIVE STOCK—DELAY—EVIDENCE.**

In an action for damages for delay of cattle and hogs transported from T. to Kansas City, Missouri, it appearing that C. was about 35 or 40 miles nearer Kansas City than T., evidence as to the usual time from C. to Kansas City from 1898 to within the last two or three years, in the absence of anything in the record tending to show that the time should not have been as short as that formerly taken was not objectionable for remoteness.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. § 228.*]

Appeal from District Court, Swisher County; L. S. Kinder, Judge.

Action by W. C. Dinwiddie and others against the Pecos & Northern Texas Railway Company and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Madden, Truelove & Kimbrough and F. M. Ryburn, for appellants. Martin & Zimmermann, for appellees.

GRAHAM, C. J. This suit was filed in the district court of Swisher county by W. C. Dinwiddie and G. C. Hutchison against the Pecos & Northern Texas Railway Company, the Southern Kansas Railway Company of Texas, and the Atchison, Topeka & Santa Fé Railway Company, as copartners and agents, each of the others, to recover damages arising from a shipment of cattle and hogs from Tulia, in Swisher county, Tex., to Kansas City, Mo., about May 29, 1909, arising from alleged delays, rough handling, and improper unloading en route. A trial before a jury on March 9, 1911, resulted in a verdict and judgment for plaintiffs and against all the defendants in the sum of $728, from which all the defendants have appealed to this court, and urge herein 14 assignments of error, discussed below, as grounds for reversal.

[1] During the progress of the trial below, it was developed that one J. A. Hutchinson owned some interest in some of the live stock included in said shipment, and appellants requested a special charge to the effect that appellees could not recover for any damages to the live stock in which said J. A. Hutchinson had an interest, and, the court having refused to give said special charge, the point is saved under appellants' first assignment of error. We are aware of the general rule that only the owner of property at the time of its injury, or the assignee of the claim for damage thereto, can recover the damages for an injury to the property;

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

when, however, a common carrier receives from a shipper live stock for transportation, and bills the same in the name of the shipper, whether the live stock be received under an express written contract of carriage, or under the implied contract arising from the acts and conduct of the parties, we think the carrier is liable to the shipper for injuries to said live stock arising from a negligent failure on the part of the carrier to perform its duty in transporting the same. S. K. Ry. Co. of Texas v. Morris, 100 Tex. 611, 102 S. W. 396, 123 Am. St. Rep. 834, and authorities there cited. While the contract under which this shipment was carried by appellants was not introduced in evidence, it is clearly shown that the live stock were actually transported under written contracts entered into between the carrier and the shipper, as W. C. Dinwiddie, one of the plaintiffs, who from the entire record appears to have accompanied the shipment, testified: "From the time I finished loading the cattle [meaning at Tulia, Tex.] at 5:15, I did not do anything from that time until I started but sign up the contracts, and the train crew were getting their orders." The principle involved is, we think, analogous to the one that prevents a tenant from questioning the title of his landlord, while at the same time holding the possession acquired from his landlord.

[2] Under appellants' second assignment, complaint is made that the trial court erred in overruling a special exception to a portion of appellees' pleading, in which a conversation was alleged between appellants' conductor and yardmaster and appellee, and which resulted in appellees having to feed and water the live stock at Emporia instead of Wellington, to appellees' damage. As we view appellees' pleading on this question, no recovery is sought on said conversations as a contract; but the facts appear to have been alleged as a means of relieving appellees from an appearance of negligence on their part for having failed to feed and water at Wellington instead of Emporia; Wellington being the better and usual place for feeding and watering live stock. As the federal statute authorizes the carrier to allow live stock to remain on cars for 36 hours in case of a request on the part of the shipper, instead of the 28 hours allowed in the absence of such request, and the evidence in the record in this cause shows that the carrier armed its conductor with written requests or contracts, to be signed or executed by the shipper, and which were, in this instance, signed or executed by him at the instance of the conductor, we think that appellants thereby constituted the conductor their agent for that purpose, and that therefore the conversations showing the reasons prompting the shipper to sign said request or contract, being in the nature of the consideration on which the shipper signed the same, were admissible and binding on the companies. G., C. & S.

F. Ry. Co. v. Kimble, 49 Tex. Civ. App. 622, 109 S. W. 234; G., C. & S. F. Ry. Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 774, on rehearing. In this case, however, no right of recovery was submitted to the jury because of any breach of said contract; but the right of recovery was by the trial court confined to the negligence of the carrier for delays and improper handling in transit, if any.

As appellants' third and fourth assignments complain of the admission of evidence showing the declarations made by the conductor in charge at the time be procured from the shipper the execution and delivery of the written request or contract, authorizing the shipment to remain on the cars 36 hours instead of 28 hours, it follows from what we have said in disposing of the second assignment that they, too, should be overruled. There is an additional reason, however, why the third and fourth assignments should be overruled, and that is because appellants insisted very earnestly on the trial below that appellees were guilty of negligence in having failed to feed and water at Wellington instead of Emporia; and we therefore think the evidence complained of under the third and fourth assignments admissible as an explanation as to why the shipment was not fed at Wellington instead of Emporia.

Under appellants' fifth assignment, it is claimed that the court erred in refusing to give a special charge to the jury, to the effect that they would consider for no purpose the evidence of the conversation between the conductor and the shipper, referring to the execution of the written requests or contract to retain the shipment on the cars 36 hours instead of 28 hours. It follows, however, from what we have said in disposing of the second, third, and fourth assignments that the trial court did not err in refusing to give such a charge.

[3] Under appellants' sixth assignment, complaint is made that W. C. Dinwiddie was permitted to testify to the effect that the damage to the shipment was increased as a result of their being fed and watered at Emporia instead of Wellington; the proposition submitted thereunder being that the pleadings did not warrant the introduction of such evidence. Appellees' pleadings allege a failure to feed and water at Wellington, and that the shipment was fed and watered at Emporia, over appellees' protest, and this is followed by a general allegation of negligence and damages because of the acts complained of; and we think that under this state of the record the evidence was admissible. T. & P. Ry. Co. v. Meeks, 74 S. W. 329; T. & P. Ry. Co. v. Crawford, 54 Tex. Civ. App. 196, 117 S. W. 193.

[4, 5] Under their seventh assignment, appellants complain that the trial court erred in refusing to give their special charge No. 5, to the effect that, if appellees were neg-

ligent in not permitting the shipment unloaded for feed and water at Wellington instead of Emporia, and that additional injury resulted therefrom, to find for defendants as to such additional injury. We think no error was committed by the trial court in refusing this charge, for the reason that there was no evidence tending to show that appellees refused to permit the shipment unloaded for feed and water at Wellington; on the contrary, the testimony does show that but for being assured by appellants' employés that, if the shipment was not fed and watered at Wellington, and appellees would sign the permit and contract, permitting the shipment to remain on the cars 36 hours instead of 28 hours, it would reach its destination without being unloaded for feed and water while in transit, appellee would have had the shipment unloaded, fed, and watered at Wellington. In other words, there was not by the testimony any issue raised as to whether or not appellee *failed to permit* the shipment to be unloaded and fed at Wellington. If appellee should be held to be guilty of negligence for relying on the assurances of appellants' employés, referring to a matter apparently within their knowledge and not within the knowledge of appellees, that question is raised by the record; but no such question is presented under this assignment. For the reasons above given, appellants' seventh assignment will be overruled.

[6] On the trial below, appellants requested the court to charge the jury as follows: "If you believe under the evidence in this case that it was the duty of the defendants to unload plaintiffs' cattle for feed, water, and rest at Wellington, instead of unloading them at Emporia, Kan., and you further believe that in the exercise of ordinary care and dispatch defendants could not have transported said cattle to Kansas City within the time limit of 36 hours, then the measure of damages will be the difference between the damages that said cattle would have sustained, had they been unloaded at Wellington, Kan., for feed, water, and rest, and the damages they sustained by reason of being unloaded at Emporia, if you find that plaintiffs' cattle were in fact damaged." And their eighth assignment is based on the action of the trial court in refusing to give said special charge. We think no error was committed in failing to give said special charge, because the same eliminated all liability for damages, if any, because of any negligence on the part of appellants, except that arising from a failure to feed and water at Wellington instead of Emporia. Aside from this, we think the trial court fairly and as fully as the circumstances warranted instructed the jury on the question sought to have been presented in this special charge.

[7] Under appellants' ninth assignment, complaint is made that the trial court erred in refusing to direct the jury not to consider the deposition testimony of the witness J. H. Lampe, introduced on the trial. While the transcript shows that appellants, by written motion before the trial began, sought to suppress certain answers in the depositions of this witness, and that the court overruled the motion, the record contains no bill of exception to the action of the trial court in overruling said motion; nor does the record show that objections were urged to the introduction of any of this witness' evidence when it was offered, nor that any motion was made to strike out any part of same after it was introduced. The record being in this condition, we do not feel that the question sought to be raised is before us in such way as to require or even warrant us in passing on the same. See Rules 53, 54, and 55 (67 S. W. xxiv) for the government of district and county courts, and Holt v. Cave, 38 Tex. Civ. App. 62, 85 S. W. 309, and Borden v. Letulle Mercantile Co., 99 S. W. 128.

[8] The admission of the evidence sought to be complained of, however, would not constitute reversible error, even if presented properly in this court, for the reason that another witness, W. C. Dinwiddie, testified to the same facts without objection, and no evidence is found in the record tending to contradict his testimony; and, further, the record fails to show affirmatively that the witness was not testifying from his memory. I. & G. N. Ry. Co. v. Blanton, 63 Tex. 109.

[9] Under appellants' tenth assignment or error, complaint is made that the trial court overruled a special exception to appellees' pleading; contention being made that appellees' pleading sought a recovery of double damages. While we do not think the pleading open to the criticism made, if there can be any question about the correctness of our view on this, no injury was done appellants, as the trial court confined the introduction of evidence to the proper measure of damages, and in the charge confined appellees' right to a recovery to a proper measure of damages.

[10] Under appellants' eleventh, twelfth, and thirteenth assignments, in the order named, complaint is made of the admission of the evidence of W. C. Dinwiddie, as to the effect holding the cattle on the cars an additional 24 hours had on them, as to the effect holding the hogs on the cars an additional 24 hours had on them, and what constituted the usual and customary run from Canyon City to Kansas City, from 1898 to within the last two or three years. The ground of objection to the evidence complained of under the eleventh and twelfth assignments being that the other proof did not show that the cattle or hogs were actually confined in the cars as much as 24 hours over and above the usual time, while it did show a total delay in transit of as much as 24 hours or more. We think the evidence complained of admissible, and that the ob-

jection sought to be made goes rather to the weight than to the admissibility thereof. If, however, the evidence were objectionable, no reversal would result, as the statement of facts shows affirmatively that other witnesses testified to the same facts without objection; and there is no evidence in the record tending to contradict the statements made by these other witnesses.

[11] The point made under the thirteenth assignment is that the evidence is too remote to form a basis from which to determine what would be a reasonable run in this case. As the other evidence shows that Canyon City was about 35 or 40 miles from Tulia, on the appellants' road, and between Tulia and Kansas City, we think the evidence complained of was admissible, as bearing upon the reasonableness of the time within which appellants should have made the run from Tulia to Kansas City at the time of the shipment; there being nothing in the record tending to show that the run at the time of the shipment should not have been made in as short a time as from 1898 to within the last two or three years. In other words, if any objection could be urged to the evidence complained of, it goes to its weight, and not its admissibility. A., T. & S. F. Ry. Co. v. Davidson, 127 S. W. 895.

Appellants' fourteenth and only remaining assignment complains that the court below erred in overruling their motion for a new trial; contention being made that the evidence fails to show any culpable negligence on the part of appellants. We have read the statement of facts through and cannot agree with appellants in this contention, but think there is ample evidence, if believed by the jury, to sustain the verdict rendered.

Finding no reversible error in the record and no merit in either of appellants' assignments, the judgment appealed from will, in all things, be affirmed; and it is so ordered.