## TEXAS & N. O. R. CO. v. HELLEN.
### No. 8693.

Court of Civil Appeals of Texas. San Antonio.

Dec. 9, 1931.

On Rehearing March 16, 1932.

Rehearing Granted April 13, 1932.

R. B. King and John C. North, both of Corpus Christi, for appellant.

Perkins & Floyd, of Alice, for appellee.

SMITH, J.

This action was brought against the railway company to recover for injuries shown to have been sustained by a shipment of cattle from Hebbronville, in Jim Hogg county, to Fort Worth.

No one accompanied the shipment as caretaker in behalf of the shipper, and it was conclusively shown that the cattle were in good condition when accepted by the carrier for transportation, and that some of them were dead and others in an injured condition when delivered at destination. It was also shown that the shipment suffered unexplained delays at various points en route, and that the carrier took about 20 hours longer than usual to make the movement.

The evidence showed that the cattle were subjected to the familiar process of arsenical dipping shortly before they were loaded for shipment, in response to statutory requirements. An expert witness for appellant testified that he made a post mortem examination of the dead cattle at their destination, and found that they had died as a result of "arsenical poisoning resulting from the absorption of dip"; that three of the cattle were suffering from broken ribs "due to their having gotten down and trampled upon by the other animals." An expert witness for appellee testified that "a delay in transportation would increase the absorption of arsenical poisoning resulting from the absorption of dip"; that "cattle usually absorb dip in a few hours, but in some cases would not absorb dip for ten hours or more. It all depends on the weather and other conditions"; that "calves are more susceptible to arsenical poisoning than cows * * * (the calves in this shipment were not injured except by excess shrinkage due to delays in transportation) if cattle are dipped in a properly stirred and proportioned 22 solution of dip, and thoroughly dried, they would not absorb dip if they were properly handled in transit and there was no delay." There was testimony that the cattle were dipped in the proper solution, that the weather cleared up, and the cattle dried off before they were loaded. There was also testimony that the unusual delay in the movement of the cattle resulted in an excess shrinkage in their selling weight of 30 pounds a head. Appellee's expert veterinarian testified that, in order to determine whether an animal died as a result of arsenical poisoning, it would be necessary to analyze the contents of the dead animal's stomach, while appellant's expert veterinarian, who attributed the death of appellee's cattle to arsenical poisoning, testified that he arrived at his diagnosis without making such analysis. Appellee's expert testified that "the symptoms of diseased cattle dying from absorption of dip resulting in arsenical poisoning would be that the skin would be scruffed, that is, dried and parched, the tissues inflamed, the lungs gorged with blood and the liver colored. However, these are merely symptoms and could be caused by other factors." And appellant's expert, who made the post mortem examination of the cattle, testified that he reached the conclusion that the cattle died as a result of arsenical poisoning "because his examination and inspection re-

vealed that the hide was dry and parched, that the surface tissues were inflamed, that the lungs were gorged with blood and that the liver was clay colored."

We have here set out all the testimony touching upon the cause of the fatalities among appellee's cattle. The two expert witnesses, and no others, testified upon the point. Appellee's witness never saw the cattle, dead or alive. Appellant's witness never saw them alive, but he did see them after they died, and then made an examination of them, as stated. We are thus relegated to the question of whether, under all the evidence set out above, the jury were warranted in finding that appellee's cattle did not die as a result of arsenical poisoning.

We are unable to escape the conviction that the jury had no such warrant. Appellant's expert was not impeached in any way, and it cannot be said that his demeanor upon the stand, or his manner of testifying, was such as to warrant the jury in disregarding or disbelieving his testimony, for he testified, not in person, but by deposition only, and the ordinary rule giving the jury carte blanche in determining the credibility of witnesses is not applicable. His testimony was unopposed. It is apparently fair and reasonable. It is in fact supported by the testimony of appellee's witness, who, after appellant's expert's testimony was on record, testified that the very symptoms disclosed by the dead cattle were those "of diseased cattle dying from absorption of dip resulting in arsenical poisoning." We sustain appellant's first proposition, and hold that the jury's finding against arsenical poisoning is contrary to the uncontradicted and conclusive testimony.

It should be added here that the evidence probably raised the issue of whether the negligence of appellant in failing to expeditiously move the cattle concurred with the effects of the dip and proximately caused the death of the cattle. But no effect can here be given this hypothesis in the face of the jury's finding. For we cannot assume the jury would have found against appellant on the issue of proximate cause, in the event they had found that the cattle died as a result of poisoning. In view of reversal, we deem it proper to add that the evidence complained of in appellant's fifth proposition should have been excluded upon the objection that it was but a presumption or conclusion of the witness.

We overrule appellant's second proposition on the authority of Missouri Pac. Ry. v. Smith, 84 Tex. 348, 19 S. W. 509; Southern Kansas Ry. v. Morris, 100 Tex. 611, 102 S. W. 396, 123 Am. St. Rep. 834; Pecos & N. T. Ry. v. Dinwiddie (Tex. Civ. App. writ of error denied) 146 S. W. 280.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

No representative of the shipper accompanied the cattle in transit, and the shipper was therefore without means of knowing or showing the time, manner, or condition in which the cattle were transported and delivered by the carrier. The burden of such showing, therefore, rested upon the carrier.

It was shown that the cattle were delivered to the carrier in good shipping condition and in apparent sound health; that they were seriously delayed in transit by the carrier; that some of them died, and others were injured in transit.

The carrier gave no satisfactory explanation of the slow movement, made no showing of the character of handling of the cattle during the long delays at stations en route.

The only affirmative defense urged by the carrier was that the loss among the cattle was due to the dipping process. The jury found against that defense. We held in the original disposition that that finding was contrary to the evidence. We conclude upon rehearing that we exceeded our prerogative in so holding, for there was at least some evidence of a material nature from which a jury, being so minded, could resolve that issue against appellant. Upon the surface of the record, this court probably would not have found as the jury did. But that is not the proper criterion by which to determine the matter on appeal. The question is, Could reasonable minds differ in determining the issue from the evidence adduced? Was there any material evidence to support the jury's findings? We conclude there was.

The carrier has not in this case successfully rebutted the prima facie case made against it by appellee in showing the cattle delivered to the carrier in good condition, and delivered by the carrier at destination in bad condition. Having failed to meet this burden, appellant cannot complain because judgment went against it.

Moreover, the question of appellant's negligence was fully submitted to the jury upon instructions of which appellant makes no complaint, and through the issues thus submitted the jury found that appellant was negligent, and that such negligence proximately caused the damages complained of. We conclude upon rehearing that the judgment should be affirmed, notwithstanding the possible error complained of in appellant's fifth proposition, which will be overruled. The objection to the admission of the evidence there complained of probably went more to its weight than its admissibility, but, in any event, the testimony was negative and unimportant, and its admission could not have reasonably affected the jury's findings.

Appellee's motion for rehearing will be granted and the judgment affirmed.